McCALEB, Justice.
 

 Pursuant to the provisions of R.S. 48:-441^-60 (known as the quick taking statute) the Department of Highways expropriated a temporary servitude upon 2.954 acres of land belonging to the defendant for a borrow pit area during the construction of the Darrow-Southwood Highway on State Route Louisiana 30. The land lies on the east bank of the Mississippi River in Ascension Parish; it is unimproved and, forming part of the batture existing between the levee and the shore of the river at low water, is subject to overflow during high water stage. This land was selected for a borrow pit area because it was found to contain the appropriate type of river sand needed for the foundation of the road under construction.
 

 ' Upon the filing by the Department of the appraisals of its experts, showing the mar*
 
 *1039
 
 lcet value of the property to be $753, and deposit of this amount in the Registry of the Court, an ex parte order of expropriation was entered by the Judge in conformity with the provisions of R.S. 48:444 and R.S. 48:445.
 

 In due course the defendant appeared and, after interposing a motion to dismiss (which was later overruled), filed her answer and reconventional demand in which she alleged that she should be allowed $21,-000 as just compensation for the reason that plaintiff had removed under the order of expropriation some 60,000 cubic yards of gravel valued at 35 cents per cubic yard.
 

 On these issues a trial was had at which the Department adduced the evidence of its three experts to the effect that the value of the expropriated land for its best adaptable use, cattle grazing, was $255 per acre, or the sum of $753, which had been previously deposited in the Registry of the Court. The estimates of these experts were calculated on an acreage market value of the property in fee based on comparable sales of property closely located to the parcel in question.
 

 The defendant, on the other hand, without adducing any evidence as to the market value of the parcel, called to the stand two laymen, Messrs. Michael and Norbert Schexnayder, who stated, in substance, that they owned land of a similar type on the west bank of the river (one property being located 12 miles below defendant’s property and the other 8 miles below Donaldson-ville, in St. James Parish) and that they had merchandised dirt from their lands for 25¡é per cubic yard to certain contractors, who paid all costs of excavation and removal. Based on this evidence, defendant claimed that she was entitled to recover from the Department $15,000 representing the 60,000 cubic yards of river sand taken from the expropriated servitude at 25^ per cubic yard.
 

 The trial judge rejected this contention on the ground that, in expropriation proceedings, the measure of compensation is the fair market value of the land and not the unit cost price of sand, gravel or even minerals removed therefrom. In support of his ruling, the judge relied on, among other cases, the decision in State of Louisiana Through Dept. of Highways v. Glassell, 226 La. 988, 77 So.2d 881, wherein it was held that, in the absence of a showing of severance damages, a landowner whose property is expropriated for borrow pit purposes may not recover more than the market value of the land.
 

 However, the judge disagreed with the contention of the Department that the best and highest use to which the property was adaptable was for cattle grazing and, being of the opinion that the evidence of the Department’s experts showed that the land was valuable and suitable for an industrial site and would be worth $637.50 per acre as
 
 *1041
 
 such, increased the expropriation price to-$1883.18.
 

 The Department acquiesced in the judgment, but defendant appealed to the Court of Appeal, First Circuit, where her claim was upheld and the award increased to $15,-000. See State Through Dept. of Highways v. Hayward, La.App., 142 So.2d 832. Upon the Department’s application, we granted certiorari.
 

 In arriving at the conclusion that defendant was entitled to be compensated for the real right expropriated at the unit price of
 
 25‡
 
 per cubic yard for the river sand taken from the borrow pit, the Court of Appeal reasoned that, because of the specific type of soil which was needed for the sub-surface of the highway to be constructed, the best and highest use of the property was to be regarded as'a repository of this special type of river sand. And, in a per curiam opinion denying an application for a rehearing filed by the Department, the court attempted to distinguish the instant case from the Glassell case, supra, and its own decision in State Through Dept. of Highways v. Ponder (La.App.), 140 So.2d 426, on the ground that it was found in those matters that the highest and best use of the property was pasturage and farm land in one and pine and timber land in the other whereas, here, “The deposits for which defendant’s property was condemned were sufficiently unique, rare and valuable that they fulfilled a highly specialized need of appellant herein. * * * ” See 142 So.2d at page 835.
 

 We think the ruling is clearly erroneous. The compensation due defendant for the expropriated real right on her property is not to be measured by the fact that the river sand was valuable to and fulfilled .a highly specialized need of the Department’s road construction proj ect; “The value should be fixed as of the date of the proceedings,
 
 and with reference to the loss the owner sustains,
 
 considering the property in its condition and situation at the time it is taken,
 
 and not as enhanced by the purpose for which it zvas taken."
 
 (Emphasis sup-’ plied.) See United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 33 S.Ct. 667, 57 L.Ed. 1063.
 

 The rule of law is well settled in this State, as it is in every other State, that the compensation to be awarded, in expropriation suits is the market value of the property taken, that is, the price which would be agreed upon between a willing and informed buyer and a willing and informed seller under usual and ordinary circumstances. State Through Dept. of Highways v. Central Realty Investment Company, 238 La. 965, 117 So.2d 261; Parish of Iberia v. Cook, 238 La. 697, 116 So.2d 491; State Through Dept. of Highways v. Havard, 239 La. 133, 118 So.2d 131 and State Through Dept. of Highways v. Hub
 
 *1043
 
 Realty Company, 239 La. 154, 118 So.2d 364. This salutary doctrine is not to be altered because the land taken or used by the expropriating authority contains material, or even minerals, which may have a particular value to the expropriator. See Yazoo & M. V. R. Co. v. Teissier, 134 La. 958, 64 So. 866, where this Court, citing the Chandler-Dunbar' case, supra, said that the criterion of just compensation is the loss to the owner.
 

 And the loss to the owner must invariably be based on the market value of the land notwithstanding the fact that the land expropriated contains mineral deposits or other valuable materials. 4 Nichols “Eminent Domain” (4th Ed.) Sec. 13.22, succinctly states the rule thus:
 

 “Also as in the case of vegetable growths, the rule has been correlatively stated that the value of such mineral deposits cannot be separately determined independently of the land of which it is a part.
 
 It cannot be considered as so much potentional merchandise to be evaluated as such.
 
 The laná taken must be valued as land with tlie'factor of mineral deposits given due consideration. * * (Italics ours).
 

 In 18.Am,Jur. “Eminent Domain,” Sec. 242, p. 878, it .is declared:
 

 “When the land taken has valuable deposits of minerals or contains sand, gravel, peat, or other materials of value, or is covered with growing crops, or trees capable of being converted into lumber,
 
 these circumstances may be considered so far as they affect the market value of the land;
 
 but part of the realty cannot be separately valued from its materials, as an item additional to the value of the land for the purpose of sale.” (Emphasis ours).
 

 Clearly, then, although evidence of the value of materials or deposits on the land expropriated is admissible, such evidence may be received only for the purpose of establishing market value; it may not be employed as the yardstick of just compensation. 1 Orgel “Valuation under Eminent Domain”, Sec. 165, p. 675, in referring to this sort of evidence, observes:
 

 “But more often the owner contends that the proper way to arrive at the market value of the property is to estimate the amount of stone in
 
 situ
 
 and to multiply this amount by a fixed price per unit. This method is uniformly rejected.”
 

 In its per curiam on application for rehearing, the Court of Appeal cited 29 C.J. S., Verbo, Eminent Domain § 174, p. 1043, as authority for its conclusion and quoted with emphasis one paragraph of the text which apparently supports its view. An examination of § 174, 29 C.J.S., reveals that the text, after correctly stating the general
 
 *1045
 
 rule that—“Where the land taken contains minerals, the measure of compensation is the market value of the land with the minerals in it, and the value of the minerals cannot be shown separately”-—concludes with the statement that “Where land is condemned- for the purpose of obtaining the minerals therein, the proper measure of damages for such minerals is the market value thereof rather than the value of such minerals as a part of the land taken”. As authority for the latter statement, C.J.S. cites Board of County Com’rs of Roosevelt County v. Good, 44 N.M. 495, 105 P.2d 470.
 

 However, the opinion in County v. Good casts some doubt that it fully supports the determination of Corpus Juris that the market value of the minerals or materials taken from the soil by the condemnor is the proper measure of compensation to be paid for land expropriated for such purpose.
 
 [1]
 
 In that matter, the question for review before the New Mexico Supreme Court was whether, in a condemnation proceeding of defendant’s lands for the purposes of securing rock, sand, gravel and caliche for use upon a public highway, the defendant should have been permitted to offer proof of the market-value of the caliche (which it was -claimed had a value as a mineral for cattle feed, when processed, as well as for road construction) or whether the proof should be confined to evidence of the acreage value of the land. The appellate court held that the evidence tendered by the defendant of the market value of the caliche should have been received and, although it expressed doubt that the evidence was of a very satisfactory nature, it remanded the case for-a new trial stating that the weight to be giv
 
 [1]
 
 en such evidence
 
 “
 
 * * * would be a question for the jury”.
 

 As we understand the decision in County v. Good (notwithstanding certain observations therein contained which may furnish some foundation for the textual statement in § 174 of 29 C.J.S.), it goes no farther’ than to hold that estimates of the value-of-mineral deposits have evidentiary value which may be taken into consideration in-establishing the market value of the land-
 
 [2]
 
 and that the court neither held nor intended to hold that, on the remand, the jury should fix the commodity price of caliche as compensation in lieu of the market value of the
 
 *1047
 
 land. But, if it be true that the authority stands for the proposition that the commodity price of materials or minerals taken from land should be regarded as the criterion of compensation to be paid the owner, this Court could not follow such a holding for more than one reason—first, because payment for minerals or river sand or other materials taken from land is unauthorized under our law as only immovable property is subject to expropriation (see R.S. 19:1; R.S. 48:217; R.S. 48:222; R.S. 48:441 and Art. 2633 of the Civil Code)—and, secondly, because the conclusion would be contrary to the established rule of this State and the vast wealth of jurisprudence from other courts of last resort that it is the market value of the land expropriated and not the value of the materials extracted therefrom which furnishes the measure of just compensation. See, among others, the Glassell and Ponder cases, supra; State Through Dept. of Highways v. Lumpkin (La.App.), 147 So.2d 80; Annotation 156 A.L.R. 1416— 1428; State By and Through Road Comm. v. Noble, 6 Utah 2d 40, 305 P.2d 495; State of Washington v. Mottman Mercantile Co., 51 Wash.2d 722, 321 P.2d 912 and Reiter v. State Highway Commission, 177 Kan. 683, 281 P.2d 1080, where the court said:
 

 “* *
 
 * The question for determination was the value of the land, not the value of the sand beneath the surface. It was proper to show the quantity and quality of the sand, and these elements could be considered in arriving at the value of the land as a whole. However, it was not proper to arrive at the value of the land being condemned by taking such quantity of sand and multiplying it either by a royalty rate per yard, or by multiplying such quantity by a price sand was currently bringing per yard.”
 

 The observations of the Kansas court are in accord with our views and are particularly appropriate to the issue in the case at bar. Therefore, since defendant failed to introduce any evidence whatever to show that the market value of her land was greater than the sum awarded by the trial judge because it contained the specific river sand extracted therefrom by the defendant, it follows that his judgment is correct and should have been approved.
 

 For the foregoing reasons, the judgment of the Court of Appeal is reversed and it is now ordered that the judgment of the district court be affirmed.
 

 SUMMERS, J., dissents, being of the opinion the judgment of the Court of Appeal is correct.
 

 [1]
 

 . See also Annotation 156 A.L.R. 1416- • 1428, whore the case editor, at page 1420, in commenting on County v. Good, seems to consider that authority in the same category as one for the expropriation of personal property (movables under our law) and cites in footnote 20 the case of Cole v. Ellwood Power Co., 216 Pa. 283, 65 A. 678, which held the compensation for the value of a quarry taken was the value of the stone in place and not its commodity price.
 

 [2]
 

 . But see dissenting opinions in State v. Mottman Mercantile Co., 51 Wash.2d 722, 321 P.2d, 912, citing persuasive authorities to the effect that a unit price per yard of the mineral content of land should not be presented separate and apart from expert opinion as to the fair market value of the land.