184 So.2d 604 (1966)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff and Appellant,
v.
Emmett LeDOUX, Defendant and Appellee.
No. 1650.
Court of Appeal of Louisiana, Third Circuit.
March 20, 1966.
*605 D. Ross Banister, Glenn S. Darsey, Ben C. Norgress, William W. Irwin, Jr., by Ben C. Norgress, Baton Rouge, for plaintiff-appellant.
Brinkman & Barstow, by Robert Brinkman, Opelousas, for defendant-appellee.
Before SAVOY, CULPEPPER and HOOD, JJ.
HOOD, Judge.
The State of Louisiana, through the Department of Highways, expropriated for highway purposes a portion of a tract of land owned by the defendant, Emmett LeDoux. Pursuant to the provisions of LSA-R.S. 48:441-445, the State deposited $3675.00 with the clerk of court as just compensation for the property taken. The defendant answered, claiming that the amount deposited was inadequate. After trial, the trial judge concluded that the value of the property taken was $15,475.00, and judgment was rendered awarding LeDoux the sum of $11,800.00 in addition to the amount which had been deposited. Plaintiff appealed, and the defendant has answered the appeal praying that the amount of the award be increased.
It was stipulated that the improvements included in the taking had a value of $475.00. The trial judge approved that stipulation, and this agreed value of the improvements was included in the award, the court obviously determining that the value of the land was $15,000.00. No claim is being made by defendant for severance damages. The sole issue presented on this appeal, therefore, relates to the value of the land which has been taken.
This case was consolidated for trial and appeal with another expropriation suit affecting property located adjacent to the tract involved here. We are rendering *606 judgment in that companion suit on this date. See State of Louisiana, Through Department of Highways v. Bertrand et ux., 184 So.2d 611.
The property affected by the instant suit was expropriated on December 30, 1963. Prior to the taking, the defendant's property consisted of 41 acres of high, well drained land. It is located immediately south of and adjacent to U. S. Highway 190, about two and one-half miles west of the City of Opelousas and about the same distance east of the community or village of Lawtell, in St. Landry Parish. At the time of the taking the property was being used by LeDoux as a rural or suburban homeplace, and he was still using it for that purpose at the time of the trial, on April 28, 1965. LeDoux's home is a substantial one-story, brick residence building, with an attached double garage. It is located in the northeast portion of the 41-acre tract, and behind the residence there is a recreational building, an outside barbecue facility, a barn and some fencing. A small cattle-raising operation was and is being conducted by LeDoux in the rear portion of this property. All of the property was well maintained and well landscaped. The front of the residence building was between 200 and 250 feet south of Highway 190.
The property taken by the State consisted of a strip of land about 1600 feet long and 85 feet wide, running along the entire north line of defendant's property, and fronting on U. S. Highway 190. It comprised a total of 2.914 acres. The purpose of the taking was to enable the Highway Department to increase the width of U. S. Highway 190, converting it from a two-lane to a four-lane, hard surfaced highway. The adjacent property owners are to have unlimited access to the improved highway, just as they have had to U. S. Highway 190 heretofore.
A railroad runs parallel to and along the north side of this highway for a distance of about four miles, extending from a point about one and one-quarter miles west of the City of Opelousas to the community of Lawtell. Along that four-mile stretch of road, where the railroad runs parallel to the highway, the only property which has highway frontage and which is suitable for commercial or residential use is located on the south side of the highway.
Maurice Chappuis and Stanley A. Tiger testified as expert appraisers in behalf of plaintiff, and Dan A. Ritchey, Jr. and John M. Wilson testified as such for the defendant. All four of these witnesses were qualified by training and experience to express expert opinions as to the value of the property, and each used the market data or comparable sale approach in arriving at his conclusions.
Ritchey and Wilson, the experts called by defendant, were of the opinion that the north 300 feet of defendant's property, being that portion which fronted on U. S. Highway 190, was best suited for "commercial" use, and that the remainder of the parent tract was best suited for residential subdivision or agricultural purposes.
They testified that they considered and appraised only the north 300 feet of the subject property, since all of the property being expropriated was within that area, and they made no attempt to determine the value of the remaining portion of the 41-acre tract. Both agreed that the portion of the property which fronted on the highway, to a depth of 300 feet, had a much higher value than did the remainder of the parent tract. Wilson felt that defendant's frontage property could be sold immediately for commercial purposes, but Ritchey indicated that it would take up to five years to sell it for that purpose, even if the front 300 feet should be divided into smaller lots and the lots should be sold separately.
Chappuis and Tiger, who testified for plaintiff, felt that the highest and best use of the entire 41-acre tract was for "rural suburban estate" purposes, being the use which was being made of it at the time of the taking. They determined what they *607 considered to be the per-acre value of the entire parent tract at the time of the taking, and they applied that per-acre value to the part taken.
Although the trial judge found that the "most profitable likely use" of defendant's property was for purposes "commercial in nature," he concluded that the value of the property taken was considerably less than that fixed by either of the two appraisers called by defendant, because of "the approximate time that could reasonably be expected for the disposition of this frontage of some 300 feet in depth."
Defendant's appraisers stated that there has been a "trend" toward commercial development along Highway 190 west of Opelousas. The evidence shows that at the time of the taking there were a number of commercial establishments or enterprises along the two and one-half mile stretch of highway between the subject property and Opelousas, the principal ones being a Negro residential subdivision located immediately east of LeDoux's property, a State Highway barn located just east of this subdivision, and the Cardinal Inn Motel which is located about one-half or three-fourths of one mile from the defendant's tract. In the two and one-half mile distance which intervened between the subject property and Lawtell, the only commercial establishments are a country grocery store and a gasoline bulk station. A substantial portion of the property between Opelousas and LeDoux's property was used for residential or agricultural purposes. One of the appraisers testified that there is some "open land," having a frontage of 4000 feet on U. S. Highway 190, between the subject property and Opelousas. And, Ritchey concedes that there are a number of spaces available for commercial development between Opelousas and Lawtell.
In our opinion, the evidence fails to establish that there was an immediate demand for commercial locations in the area of defendant's property at the time of the taking. We feel, however, as we think the trial judge did, that it is reasonably prospective, as distinguished from remotely prospective, that "within the reasonably near future" there will be a demand for the north 300 feet of defendant's property for commercial purposes. The evidence is sufficient, we believe, to remove such potential use or classification from the realm of guesswork, speculation or conjecture. See State Through Dept. of Highways v. Rapier, 246 La. 150, 164 So.2d 280; State, Dept. of Highways v. Carlina, La.App. 1 Cir., 169 So.2d 265. The purpose of classifying the property as to its highest and best use, of course, is to determine its market value as of the time of the taking. In this instance, because of the potential use of this frontage property for commercial purposes, there is no question but that the portion which fronts on the highway had a greater market value at the time of the expropriation than did the remainder of the defendant's property. Our conclusion is that at that time the highest and best use of the north 300 feet of defendant's land was for development for future use as commercial sites.
Ritchey testified that in his opinion the front 300 feet of defendant's property had a value of 17½ cents per square foot, or about $7500.00 per acre, at the time of the taking. According to his computations, the value of the property expropriated, including the stipulated value of the improvements, amounted to $22,213.45. Wilson, the other appraiser called by defendant, concluded that defendant's frontage property had a value of 21 cents per square foot, or $9175.00 per acre, and that the property taken, including improvements, had a value of $26,656.14. As we have already pointed out, neither of these appraisers attempted to appraise the entire 41-acre tract.
Chappuis, one of the appraisers called by plaintiff, valued the entire parent tract, excluding the improvements, at $1000.00 per acre, and he concluded that the property taken had the same per-acre value. In his opinion the property expropriated, with improvements, had a value of $3390.00. Tiger *608 valued defendant's land at $1100.00 per acre, and concluded that the total value of the property taken was $3680.00.
The appraisers called by defendant based their conclusions as to value on a total of five prior sales which they considered to be comparable. Each of these sales affected relatively small lots of land located on U. S. Highway 190, between the subject property and the city limits of Opelousas. These sales were completed in 1955, 1957, 1959, 1960 and 1963, respectively. Ritchey and Wilson felt that the value of land in that area had increased at the rate of about six per cent per year, and in order to relate those sales to the subject property they adjusted the price upward at about that rate on each sale which occurred prior to the date of the taking. Also, in order to better relate those sales to the subject property, they made further adjustments in the price because of the difference in the size and location of each tract and in the improvements which were located on it.
Ritchey testified that after making these adjustments he determined that the comparable sales which he considered indicated that the north 300 feet of defendant's property had a value of from 11½ cents to 23 cents per square foot at the time of the expropriation. On the basis of these sales, he concluded that the property taken had a market value of 17½ cents per square foot at the time of the taking. Wilson, using substantially the same procedure, found that the comparable sales which he considered indicated that the property taken had a value of from 12 cents to 28 cents per square foot, and by averaging those prices, he concluded that the subject property had a value of 21 cents per square foot.
Chappuis and Tiger felt that the prior sales used by defendant's appraisers were not comparable because of the smaller size of the tracts involved and because they were nearer the City of Opelousas than was the subject property. They described about ten sales in that area which they considered to be comparable and which they used in determining the value of such property. Among those sales was one completed in November, 1962, in which an 8.438-acre tract of land, located about three and one-half miles south of Opelousas, on what was then the principal highway between Opelousas and Lafayette, was sold for a price of $1303.63 per acre.
In another sale, completed in 1957, a three-acre tract, located one-quarter of a mile east of the subject property, with frontage on U. S. Highway 190, sold for $2000.00 per acre. In 1960, a two-acre tract, located about one and one-half miles west of Lawtell on the same highway, sold for $1000.00 per acre. And, in 1961, a ten-acre tract, located about two and one-half miles west of Lawtell, with frontage on that highway, sold for $360.00 per acre. Plaintiff's appraisers have adjusted the price upwards on most of these comparable sales in order to relate them to the subject property, the adjustments having been made because of the time of the sale, the improvements on the property, and the distance each tract is from the City of Opelousas. After doing so, however, they concluded that these sales indicate that the value of the subject property at the time of the taking was considerably less than that stated by defendant's appraisers.
Our attention also has been directed to the fact that defendant LeDoux purchased the very property which is the subject of this expropriation suit in 1951 for a price of $650.00 per acre. If that price should be adjusted upward at the rate of six per cent per year for the thirteen year period which intervened between the time of that sale and the date of this expropriation, that being the rate of increase in value used by defendant's appraisers, the result would indicate that the present value of that property is still much less than the lowest value stated by either of defendant's appraisers.
The compensation to be awarded in expropriation suits is the market value of the property taken, that is, the price which would be agreed upon between a willing *609 and informed buyer and a willing and informed seller, under usual and ordinary circumstances. State, Through Department of Highways v. Hayward, 243 La. 1036, 150 So.2d 6. The term "market value," as used in our expropriation laws, is also defined as the highest price, estimated in terms of money, which the land will bring if exposed for sale on the open market, with a reasonable time allowed to find a purchaser buying with knowledge of all the uses and purposes to which it is best adapted and for which it is capable of being used. Gulf States Utilities Company v. Cormier, La.App. 3 Cir., 182 So.2d 176.
In the instant suit, we think the evidence establishes that the value of the property taken was greater than that stated by plaintiff's appraisers, but was less than that arrived at by the experts who testified for defendant. The trial judge apparently concluded that the property had a value of slightly more than $5000.00 per acre at the time of the taking. This conclusion appears to us to be supported by the evidence.
The State contends, however, that the trial court erred in failing to consider the value of the 41-acre tract as a whole, in the condition in which it was prior to the taking. It is argued that there can be only one highest and best use of the entire parent tract, that the trial court erred in determining that a hypothetical commercial strip of 300 feet in depth has a different or greater value than the rest of the parent tract, and that it erred in failing to base the award on the same per-acre or squarefoot value as that possessed by the entire parent tract.
An issue almost identical to that presented here was considered by us in State, Through Department of Highways v. Landry, La.App. 3 Cir., 171 So.2d 779. In that case the Highway Department expropriated 1.3 acres of highway frontage from the defendant landowner's 25-acre tract. The trial court concluded that the portion of the parent tract which fronted on the highway, to a depth of 150 feet, was more valuable than the remainder of the property because it was suitable for use as commercial property. Although the strip of land taken did not extend to a depth of 150 feet, the award was based on the market value which the property would have had if it had been sold in commercial lots with a depth of 150 feet. The State contended that the award should have been based on the pro rata loss in value of the entire parent tract caused by its reduction in area because of the taking. It was argued that the landowner should not be awarded the commercial market value of the frontage taken, as if it were sold on the market for commercial purposes, because the original highway frontage was being replaced by a new highway frontage. A majority of this court held, however, that the landowner was entitled to an award based on the square foot value of the frontage land "squared off to a depth of 150 feet." In so holding, the majority said:
"* * * For, in general, the market value of the particular portion of a tract expropriated is determined by the actual market value of the portion taken, not by its average per-acre value as a pro rata portion of the parent tract. * *"
* * * * * *
"We regard the proposition as settled by Louisiana jurisprudence and statute, therefore, that landowners are entitled to receive the full and actual market value of highway frontage expropriated for further highway purposes, without deduction therefrom because a new highway frontage will be provided, by reason of the taking, for formerly-rear portions of the parent tract. * * *"
Substantially the same issues were presented in the earlier cases of State, Department of Highways v. Caillier, La.App. 3 Cir., 157 So.2d 274, and State, Department of Highways v. Circle Center Corp., La. App. 1 Cir., 148 So.2d 411. In each of those cases the award was based on the higher value of the frontage property which was *610 taken, rather than on the pro rata value of the entire tract, although the remaining property would be provided with substantially the same frontage on the same improved highway after the taking.
We consider the Louisiana jurisprudence to be settled, therefore, that generally the market value of the particular part of a tract expropriated is determined by the actual market value of the portion taken, and not by its average per-acre or square-foot value as a pro rata portion of the parent tract. Also, a landowner is entitled to receive the full and actual market value of highway frontage expropriated for further highway purposes, without deduction therefrom because of the fact that by reason of the taking a new highway fronttage will be provided for formerly rear portions of the parent tract.[1]
In the instant suit, however, the State correctly notes that the dimensions of the property actually taken, extending only to a depth of 85 feet, could not accommodate any commercial development. The State thus argues that since the strip of land actually taken is not deep enough for commercial use, the trial court erred in basing its award on the value of land which could be used for commercial purposes.
As has been pointed out in the footnote, the author of this opinion has consistently agreed with the views thus expressed by the State. A majority of this court, however, has determined that under the circumstances presented here the defendant landowner is entitled to recover the highest per-acre or square-foot market value of the frontage property "squared off" to a depth which would be most suitable for commercial purposes, even though the property actually taken does not have sufficient depth to accommodate commercial development. State, Through Department of Highways v. Landry, supra, and State, Department of Highways v. Caillier, supra.
The State also points out that a hypothetical commercial strip of a depth of 300 feet would require a penetration into the highly improved remainder and that the converting of this frontage to commercial uses would require the destruction or virtual loss of the substantial residence building which is located on this property. It is argued that the landowner could not prudently convert the frontage to commercial use, because the commercial market value which he could obtain for that frontage would be more than offset by the loss which would be occasioned to the remainder. Ordinarily, there would be considerable merit to this argument, but we find that it is not supported by the facts here. In this instance, the homeplace is located in the extreme northeast corner of the parent tract, and it occupies only a very small portion of the 1600-foot frontage. Also, there is some evidence to the effect that the residence building can be converted to commercial use with little loss of value, and we cannot say that the trial judge erred in accepting that evidence.
Our review of all of the facts convinces us that there is sufficient evidence to support the judgment appealed from, and for *611 that reason we have decided to affirm the award made by the trial judge.
No claim is being made here for severance damages, and we express no opinion as to whether severance damages might be allowable under circumstances such as those presented here, where the award is based on the higher commercial value of the frontage property, thus assuming that in order to derive that value from the strip of land taken, it would be necessary and financially advantageous to the landowner to cut off the remainder of the tract from any highway frontage.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.
NOTES
[1] Heretofore, the author of this opinion has consistently disagreed with this statement of the law, having been of the opinion that the pro rata value of the parent tract should be awarded for the taking, and that where justified an additional award should be made for severance damages. It is because of that disagreement that he felt that a rehearing should be granted in State, Through Dept. of Highways v. Landry, 171 So.2d 779, and in State, Department of Highways v. Caillier, 157 So.2d 274. In each of those cases, however, the Supreme Court denied applications for writs. In denying writs in the Caillier case, the court stated only that, "the result is correct," but in the Landry case it was stated that, "on the facts found by the court of appeal there appears no error of law in its judgment." It appears, therefore, that the Supreme Court has now approved the statements of law which are contained in the Landry case, and we are bound by that judgment.