TATE, Judge
(dissenting).
My brethren of the majority have seen fit to reduce the trial court’s award by some thirty thousand dollars upon the deduction that the landowners should be paid only the raw acreage value of this 7.4-acre tract ($3,250 per acre, totalling $24,000) instead of the amount by which it is valued for ready sale as subdivision lots ($52,232.50). By so doing, the majority not only disregards attaching any weight whatsoever to the trial court’s considered evaluation of the testimony of the various appraisers and of the factual circumstances pertinent to this particular case — it also accomplishes, in my opinion, a gross injustice to the landowners.
The evidence shows that the 7.4-acre tract taken, part of a tract immediately adjacent to a new school, is situated in an area surrounded by subdivisions, and that there is a ready sale for its area as subdivision lots. In 1958, when land was acquired from the present landowners for a new school, they were first approached for the purpose of subdividing the property for sale as residential lots. They refused this offer, because the land was more valuable to them for possible expansion of their brick-making business. Because they retained the land instead of selling it then in 1958 for subdivision purposes, the majority now awards them only the raw acreage cost ($24,000) they could have obtained by selling it in 1958 to a subdivider for such purposes !
If the present substantial landowners (capable of holding the land and selling off the lots themselves instead of through a developer) had sold their land in 1958 at a raw acreage price, the majority would allow the 1958 purchasers (who had bought for subdivision purposes) the $30,000 increment in value which it now disallows to the original landowners. This is because the property would then undoubtedly be valued at its true market value based upon the worth for resale of the residential and commercial lots contained in the tract. No *499 such fiction would then be followed as to appraise the land according to its raw acreage value as if the landowner had wanted to sell it to a redeveloper in 1958 for subdivision purposes, when in fact now at the time of the 1962 taking and always thereafter there is a ready sale of the property per lot at its lot-value instead of only at its raw-acreage value.
In my opinion, we follow senseless mechanical formula to disallow the landowner’s recovery of the true worth of the property, and we adhere to some artificial theory that the original landowner can never recover the per-lot value of the land and recover the same profit as would a developer to whom he sold the land for the same purposes, when in fact as the evidence indicates there is a ready market for sales of the lots and the per-lot value represents the true market value of the tract.
The cases relied upon by the majority are factually distinguishable, where speculative resale only was concerned. In applying the wrong legal principle to the present facts where there was a ready market value for the lots, the majority commits error of law and reaches a result directly contrary to the holdings of the following cases, among others: City of Shreveport v. Jones, 236 La. 727, 109 So.2d 72; State through Dept. of Highways v. Cobb, La.App. 3 Cir., 169 So.2d 419; State through Dept. of Highways v. Brooks, La.App. 2 Cir., 152 So.2d 637; State through Dept. of Highways v. Barrilleaux, La.App. 1 Cir., 139 So.2d 242; State through Dept of Highways v. Boyer, La.App. 3 Cir., 130 So.2d 738. See also State through Dept. of Highways v. Fontane, La.App. 1 Cir., 185 So.2d 573.
In determining just and adequate compensation for expropriation suits, it is usually said that the award should be based upon the market value of the property taken: the price which would be agreed upon between a willing buyer and a willing seller, see State Through Dept. of Highways v. Hayward, 243 La. 1036, 150 So.2d 6 and cases therein cited; that is, the worth of the property in the list of the highest and best use to which the property is adaptable and to which it may reasonably be put in the not too distant future, State Through Dept. of Highways v. Rapier, 246 La. 150, 164 So.2d 280.
The basic purpose in all cases, however, is to determine the just and adequate compensation required by our constitution. Whatever approach or formula of valuation used, it should take into consideration “all factors which lead to a replacement of the loss caused by the taking. This means substantially that the owner is placed in as good a position pecuniarily as he would have been had his property not been taken. [Many citations omitted.]” State Through Dept. of Highways v. Ragusa, 234 La. 51, 99 So.2d 20, 21. See Gulf States Utilities Co. v. Norman, La.App., 183 So.2d 421, and cases therein cited.'
We have ignored these principles in failing to allow the true market value of the taken property by substituting some artificial judge-made formula for the constitutional mandate that private property cannot be expropriated unless “just and adequate compensation is paid”. Article 1, Section 2, La. Constitution of 1921.
I respectfully dissent from the majority’s failure to allow the landowner the true market value of the property taken as constitutionally required. In my opinion, the majority’s reversal of the trial court’s ruling in this regard constitutes error of law and results in manifest injustice.