BAILES, Judge.
This is an expropriation proceeding instituted by the State of Louisiana acting through the Department of Highways to acquire fee title to certain property and a temporary servitude on a borrow pit allegedly needed for the construction of Louisiana State Highway 1-59. The property sought to be expropriated belonged to the defendant and is situated on the east side of its railroad track in the village of Pearl River in St. Tammany Parish. In accordance with a certificate of estimate of just compensation executed by two appraisers employed by the Department of Highways, the sum of $15,741 was deposited in the registry of the court.
Within the delays provided for in LSA-R.S. 48:451, the defendant answered the plaintiff’s demands contending that the property expropriated had a value of $53,-332, and that by the taking of this property it suffered severance ■ damages to the remainder of the property in the amount of $28,000. It alleged the remainder of the-tract of land from which the expropriated portion was taken was worth that much less-than prior thereto. After trial, the district court awarded defendant the sum of $20,-179.60. This award included $980 in severance damages. Additionally, the defendant’s two expert witnesses were each allowed fees of $100, however, its other expert witness, Mr. Gore was not allowed any expert fee for his testimony. In awarding the-defendant compensation and damages in the-above mentioned amount, the trial court found from the evidence that the defendant’s property expropriated, both in fee title- and by exercise of the servitude for the use of a borrow pit, was worth $300 per acre. The property acquired in fee title comprised. 21.576 acres and the temporary servitude affected 31.756 acres, or a total of 53.332' acres. Across the area and encompassed: within the bounds of the borrow pit, the de *431 fendant owned a spur track which was totally destroyed in the taking'. It was jointly stipulated between the parties that this spur track had a value of $3,200. In awarding severance damages, the trial court found defendant had no unrestricted ingress and egress of the 9.8 acres of land remaining on the east side of the new highway. Although the trial court did not expressly so state, it appears from the amount of the award that it considered the severance of this expropriated property diminished the value of the remainder lying east of the new limited access highway in the amount of $100 per acre. The defendant appealed, and the plaintiff answered the appeal only to the extent of seeking the disallowance of any severance damages. Plaintiff otherwise contends the judgment of the trial court is correct and should he affirmed.
The issues before this court are the market value of the property expropriated, the value of the severance damages, if any, to the remainder of the property, and whether defendant’s expert witness, Mr. Gore, is entitled to a witness fee, and finally, are the fees fixed for its two other experts adequate.
Prior to the taking, the defendant owned ■one single tract of land consisting of 82.932 acres situated in Section 41, Township 8 South, Range 14 East, Greenburg Land District, St. Tammany Parish. This property was all located on the east side of defendant’s railroad tracks and south and west of Brockham Bayou or Pump Slough. Defendant acquired this property in 1885. For an undisclosed number of years, it maintained a borrow pit thereon as a place from which earth fill was obtained for use on its railroad track, however, it appears that for some years no use at all was made of the borrow pit by the defendant. At the time of the taking, and for possibly a great many years prior thereto, nearly all of the acreage had been allowed to grow up in pine trees and underbrush. Small areas had been used from time to time by commercial and cooperative ventures of different kinds, however, at the time of the taking in 1960, no use, other than timber growing, was being made of this property.
As LSA-R.S. 48:453 places the burden on the defendant to prove the market value of the land taken, the defendant must go forward with the necessary proof to show that the true value of the expropriated property exceeds the estimate of just compensation filed by plaintiff. To do this defendant utilized the testimony of two realtors who qualified as expert appraisers. These two experts were Mr. Gus B. Baldwin and Mr. Kenneth Stevens, Sr., both of Slidell. The testimony of these two witnesses was almost identical to each other. They avowed there were no comparables with which they could compare the subject property. It was their opinion that the property at the time of the taking was worth $1,000 per acre. This value was based on the highest and best use being industrial. They stated that as there were no local sales of industrial property, it was necessary for them to compare this property with two particular sales they were aware of in Slidell, about seven miles south of Pearl River. Although the value of the land was not separately detailed in the act of sales by comparing the estimated value of this real estate with the subj ect property, it was their opinion the subj ect property was worth $1,000. In their testimony each stated the subject property possessed all the necessary attributes of industrial property, namely: Accessible to navigable stream (although it was admitted that Brockham Bayou was blocked by a sunken barge, and the channel would require straightening, deepening and widening); accessible to rail spur and mainline railroad; accessible to U. S. Highway 11; availability of gas, electricity and water; and availability of labor. It was admitted by these witnesses that both rail and highway transportation were available for the entire seven miles between Pearl River and Slidell, although there was only one industry located within that distance and that was a brick plant that had been so located for many years. Further, it was conceded by them that they knew of no in *432 dustrial demand for this property or other similarly located property in this area. Both of these witnesses, as well as the other witnesses who appeared for defendant, stressed that this property had been historically industrial. There is no showing that all of this tract was ever used for industrial purposes. There was a sawmill located on a part of this property from about 1919 to 1924; another sawmill from 1946 to 1951; a Western Union pole-testing area which ceased operations in 1952; a small area was used by a cooperative for a brief time; and a loading ramp was operated by another concern there in 1957.
What this court said in Texas Eastern Transmission Corporation v. Bowie Lumber Company (La.App., 1965) 176 So.2d 735, appears apropos here:
“We find the defendant’s offer of proof of severance damages to be entirely inadequate, and the basis for industrial use to be too speculative and remote to justify an award. Defendant has failed to show that such a potential use is reasonably prospective, or that it can be anticipated within the reasonably near future. * *
Also see State, Through Department of Highways v. Treat (La.App., 1964) 163 So.2d 578; and State, Through Department of Highways v. Rapier (La.App., 1963) 152 So.2d 272.
Although this property may possess all the required attributes of property sought by industry or destined to an industrial use it amounts to naught unless with these qualities there is a demand for this property, or similarly situated property, in this locale. There must be an available industrial user who is interested or a definite showing of a reasonably prospective use of the property in the immediate future. The defendant’s witnesses negated their own conclusion of the highest and best use of this property when they acknowledged that they knew of no demand or market for this property by any industry.
The trial court fixed a value of $300 per acre on the subject property based on the testimony of the plaintiff’s two-experts, Mr. Henry B. Breeding and Mr. Leroy Cobb. Both of these gentlemen used the market data approach method in their determination of value. Each testified that they worked together in gathering information, viewing the property on at least five or six occasions, taking photographs and marshaling other data, although each made a separate computation of value. They assembled about twenty-three different-sales of property in this general area, and from these sales separated about five with similarity sufficient to warrant a conclusion of value of subject property. They concluded from their study that two possible uses might be profitably employed by the owner. Mr. Breeding favored, as the-highest and best use, the division of the property into one acre, or larger, residential sites. He determined the value to be $200' per acre. Mr. Cobb found timber growing-to be the highest and best use and concluded from the comparables that the subject property had a value of $300 per acre, and that the borrow pit had a diminished' value of $150 per acre. Both of these witnesses stated there was no severance damages because there is a road available to the owner extending from the west side of the new highway, crossing the highway at the northern end of the property under the two bridges, and extending therefrom back along the east side of the highway to-the 9.8 acres remaining on that side of the highway. They found the remainder of the property continued to have the same accessibility as it had prior to the taking. Mr. Breeding further maintained there was no severance damages because smaller tracts command a higher unit price tiran-do larger tracts.
Defendant contends there has been no-dedication of the access road described above to the use of the 9.8 acres on the east side of the highway and that its use to this property can be withdrawn, regulated, or even curtailed or denied at the *433 option of the plaintiff. We find that defendant is correct in this conclusion, and for this reason we find there is damage to the 9.8 acres by this severance.
Plaintiff urges us to accept the finding of the trial court, except it urges there is no basis for the award of severance damages in the amount of $980. It is our conclusion that the trial court was correct in both its determination of market value and severance damages.
The defendant argues vigorously in its brief that it is entitled to be awarded compensation for the fill dug from the borrow pit, on the basis of the quantity of yards of fill removed. Mr. Gore, the soil expert who testified as to the quality and quantity of fill removed from the borrow pit, computed that 284,000 cubic yards of this high quality fill was removed. Defendant reasons that inasmuch as Pearl River, Louisiana, as shown by the testimony of its mayor, Mr. James D. McQueen, pays forty cents per yard for such quality fill, the plaintiff should be assessed with a like unit price.
From our appreciation of the facts of this case and our understanding of the law applicable thereto, it is quite clear to us that the compensation due defendant is governed and controlled by the holding of the Supreme Court in the case of State, Through Department of Highways v. Hayward (1963) 243 La. 1036, 150 So.2d 6, wherein the facts are in close enough analogy to make the following pronouncement applicable. Therein the court stated:
“(1,2) * * * The compensation due defendant for the expropriated real right on her property is not to be measured by the fact that the river sand was valuable to and fulfilled a highly specialized need of the Department’s road construction project; “The value should be fixed as of the date of the proceedings, and with reference to the loss the owner sustains, considering the property in its condition and situation at the time it is taken, and not as enhanced by the purpose for which it was taken.’ * *
The Hayward case involved the question of the proper method of computing the value of sand when the highway department had expressly .expropriated a servitude to remove sand located near to and used in the building of the highway. Defendant urges us to apply the same law to the instant case as was applied in the case of State, Through Department of Highways v. Gifford-Hill & Company (La.App., 1963) 158 So.2d 448. In that case the court said:
“(4) * * * (W)e are concerned with sand not expropriated or taken by the highway department, but sand which is part of the realty near defendant’s sand and gravel plant and outside the right-of-way, which land has admittedly been damaged by the expropriation. The location of this sand on defendant’s property greatly enhanced the value of its property and the expropriation has damaged that part of the property where the sand was located.”
We hold that the Hayward case law is applicable to the instant case, and that defendant is not entitled to be compensated on the basis of a unit price per cubic yard of material removed from the expropriated borrow pit.
This brings us to a consideration of the contention of defendant that its expert, Mr. James R. Gore, should be allowed an expert witness fee. The record clearly discloses that Mr. Gore was qualified as an expert and he is entitled to be allowed a fee as such. The record is barren of any testimony as to time spent in making investigations, preparing for trial, and number of days devoted to the courtroom. Without some evidence in the record to justify a fee calculated on a per diem basis, the court is without authority to arbitrarily fix an expert witness fee. We are justified in concluding from the record and the testimony of each witness that at least *434 two days were consumed in preparation for trial and one day spent in the courtroom. It well may be that more time was expended, however, we have no proof of it. The court did fix the expert witness fee for Mr. Baldwin and Mr. Stevens at $100 each. We find a witness fee of $300 to each Mr. Gore, Mr. Baldwin and Mr. Stevens is justified by tire record, and so fix their fee in that amount.
For the foregoing reasons, the judgment appealed from is amended to increase the expert witness fee of Mr. Baldwin and Mr. Stevens from $100 each to $300 each, and that the expert witness fee of Mr. Gore is fixed at $300, and in all other respects the judgment appealed from is affirmed.
Amended and affirmed.