276 So.2d 315 (1973)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant-Applicant,
v.
TRIPPEER REALTY CORPORATION, Defendant-Appellee-Respondent (and Defendant-Appellee-Applicant).
Nos. 52210, 52224.
Supreme Court of Louisiana.
March 26, 1973.
Rehearings Denied May 7, 1973.
*317 Philip K. Jones, D. Ross Banister, Chester E. Martin, Marshall W. Wroten; Charles Wm. Roberts, Burton & Roberts, Baton Rouge, for defendant-applicant.
Wray & Robinson, W. P. Wray, Jr., Baton Rouge, for plaintiff-respondent.
*318 CALOGERO, Justice.
This is an expropriation suit brought pursuant to the Louisiana "quick-taking" statute.[1] Defendant contests the adequacy of a $4,484.00 deposit made by the Department of Highways incident to the taking of a strip of land approximately 30 feet by 390 feet (actually, 10,881 square feet). Defendant had owned land containing 9.97 acres fronting 620 feet on the east side of the Airline Highway (in Baton Rouge, Louisiana). The strip of land taken, approximately 30 feet in depth, comprised the northernmost 390 feet of Airline Highway frontage. The remaining 230 feet of Airline Highway frontage (the southern portion of the tract) was unaffected by the taking.
There were located on the northern portion of the tract two buildings, one of which, the main building, had its front approximately 30 feet from the easterly right of way line of Airline Highway.
While the Highway Department alleged in their original petition that there were no buildings situated wholly or partially on the parcel of land expropriated, the "metes and bounds" description in the same petition, as well as an exhibit attached thereto (plat of survey made by Kellen & Associates, Inc. Civil Engineers, dated October 1, 1960) indicated that the easterly line of the parcel taken was located upon the front of the main building. A Department resurvey in 1968 found that the line was located 1.15 feet from the northwesterly corner of the building, well beneath the building overhand, and some 6 inches into the southwesterly portion of the building.
The taking was by a petition filed on May 8, 1963. On November 20, 1968, after the State had filed, in June 1967, its notice of acceptance of the highway project, the State filed a supplemental and amending petition attempting to "clarify" an "ambiguity" in the original petition by changing the "metes and bounds" description to describe a parcel approximately 26 feet by 390 feet, so as to have the easterly property line of the taken strip fall outside of the building and its overhang.
Both the District Court and the Court of Appeal held that the 30 foot strip of ground including a portion of defendant's building, was taken on May 8, 1963 when plaintiff's petition, in accordance with the "quick taking" statute, was filed, and that the State could not re-vest title in defendant by filing an amended petition some five years later. With this finding we agree.
R.S. 48:445 provides that upon deposit of the amount of the estimate in the registry of the Court, pursuant to an ex parte order attached to the original petition, "title to the property and property rights specified in the petition shall vest in the department..."
The "quick taking" statute further provides that the Department of Highways "shall not be divested by court order of any title acquired under these provisions except where such court finds that the property was not taken for a public use..." La.R.S. 48:460. Clearly there is no provision of law permitting the State five years after title has vested in them, to divest themselves of title by the simple expedient of an amended petition. While such course of action would have been available to them had they proceeded to expropriate under the provisions of R.S. 19:1 (the general expropriation statute), where title does not vest until final judgment is rendered, it is not available under R.S. 48:441-460, the statute under which they chose to proceed.
The District Court valued the land taken at $15,000 per acre, or 33 cents per square foot. They found severance damage to the land and to the building. And they allowed a monetary sum for the taking of a portion of the building's overhang as well as for minor improvements on the land *319 taken, namely a filter bed, concrete driveway and sign. Accordingly, the District Court awarded defendant property owner, $3,590.00 for the land taken, $2,500.00 for the minor improvements, $5,000.00 for the taking of a portion of the overhang, $44,000.00 for severance damage to the land and $30,000.00 for severance damage to the building, for a total of $85,090.00 less the deposit of $4,484.00, for a balance of $80,600.00. Furthermore, the Court found no offsetting special benefits.
The Court of Appeal 256 So.2d 683, on the other hand found the value of the land immediately prior to the taking to be $12,000.00 per acre, or 27½ cents per square foot. The Court allowed $2,992.28 for the land taken, and $2,500.00 for the filter bed, concrete driveway and sign. Then the Court determined that there were no severance damages (to land or building) but allowed $55,210.00 as "just compensation for the taking of the building," for a total just compensation award of $60,702.28.
At the outset we find no error in the land value found by the Court of Appeal, namely, $12,000.00 per acre, or 27½ cents per square foot, immediately prior to the taking on May 8, 1963. There were innumerable "comparable" sales relied upon by the experts. The Court of Appeal apparently preferred the opinion, with substantiation, of the Department's expert Mr. Karl J. Snyder. We agree with the Court of Appeal's evaluation in this regard.
In its opinion on the matter of value of the land the Court of Appeal stated:
"In finding the value of the property, most of the experts relied on two sales to the Coca Cola Company, made in 1960, which reflected a value of $15,000 per acre. These sales are located almost directly across the Airline Highway from defendant's property on a service road, and have no remaining frontage on the highway. The Department's experts were of the opinion that since the sale took place after the location of I-12 was known, the price reflected some of the benefits therefrom. They therefore adjusted the value down to reflect the non-enhanced value."
Defendant argues vehemently that the Court of Appeal was thus valuing his property as of 1958 prior to the time the location of the interchange was made known, rather than as of 1963 when the property was taken.
We think this contention has no merit.
As was stated in State v. Hayward, 243 La. 1036, 150 So.2d 6 (1963) the value of the property should be fixed considering the property as of the time it is taken, but not as enhanced by the purpose for which it is taken.
The Court of Appeal simply determined that the Coca Cola sales were not good comparables because their price included enhancement for the interstate. They in fact valued the property as of 1963 based on comparable sales which they considered more appropriate and similar, and without enhancement attributed to the interstate.
We agree with their valuation, and we do not find their reasons erroneous.
We do not agree that $55,210.00 can be allowed as compensation for the taking of the building, for only the front wall of the building was taken and the $55,210.00 constitutes neither the value of the wall, nor the cost of its construction originally, nor an estimate of the cost of its reconstruction. Nonetheless, we affirm the judgment of the Court of Appeal for we believe their result is correct for other reasons.
There is no question that the front weight bearing wall of defendant's building was taken by the Department of Highways, as was found by both lower courts.
The Zoning Ordinance for the Parish of East Baton Rouge requires that property, like defendant's zoned C-4, have a 40 foot front yard. Defendant's property, with a *320 30 foot front yard prior to the taking, was constructed prior to passage of the Zoning Ordinance and consequently enjoyed a non-conforming status under the ordinance. East Baton Rouge Parish Zoning Ordinance, Sec. 4.309, provides that "parts of existing buildings that violate yard regulations may be repaired or remodeled but not reconstructed or structurally altered." The ordinance at Sec. 1.111 goes on to describe structural alteration as including "any changes in the supporting members of a building, such as bearing walls or bearing partitions, columns, beams or girders, or any complete rebuilding of the roof or the exterior walls."
It is therefore clear that defendant in reconstructing his building will be required to meet the 40 foot front yard provision of the ordinance.
There was uncontroverted testimony at the trial that it would cost $55,210.00 to tear down the front 40 feet of the building and rebuild a similar structure elsewhere on the property.
The fact that the zoning ordinance permits application to a Board of Adjustment for a variance is no solace to defendant in these proceedings, for to disallow here, adequate compensation to facilitate reconstruction of the building portion in compliance with the zoning ordinance would result in placing defendant at the mercy of a political board with legal discretion to disallow the variance. Furthermore, were we to assume that defendant would succeed before the Board of Adjustments in securing his variance he would still be required to reconstruct his front weight bearing wall inside his new property line and at a point so close to the State's right of way and the service road that there would surely result (as found by the District Court) a substantial diminution in market value of the building.[2]
We now turn our inquiry to certain legal principles which are involved in matters of expropriation. The Louisiana Constitution of 1921, Art. 1, Sec. 2 provides in pertinent part:
"... Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid."
Just compensation for property taken is the fair market value thereof immediately prior to the taking without any enhancement by virtue of the purpose of the taking. State v. Hayward, 243 La. 1036, 150 So.2d 6 (1963); Gulf States Util. Co. v. Wyatt, 164 So.2d 615 (La.App.3rd Cir. 1964); State v. Chadick, 226 La. 367, 76 So.2d 398 (1954). Where a tract of land is partially taken, damage to the remainder is considered as severance damages, and these damages are given in addition to the award for the land actually taken. State Through Dept. of Highways v. Reddell Creosote Co., 252 So.2d 721 (La.App.3rd Cir. 1971); State Through Dept. of Highways v. Wolfe, 252 So.2d 483 (La.App.3rd Cir. 1971). The burden of proving these severance damages is on the landowner. State Through Dept. of Highways v. W. T. Burton Industries, Inc., 219 So.2d 837 (La.App.3rd Cir. 1969). Under the "Quick Taking Statute" (La.R.S. 48:441-460) severance damages are determined as of the date of the trial. La.R.S. 48:453, State Through Dept. of Highways v. Browne, 224 So.2d 51 (La.App.1st Cir. 1969).
*321 The expropriating authority is allowed to offset against severance damages any special benefits accruing to the remainder of the property. However, the authority has the burden of proving these special benefits. State v. Central Realty Co., 238 La. 965, 117 So.2d 261 (1960); Thomas & Warner v. City of New Orleans, 230 La. 1024, 89 So.2d 885 (1956).
Special benefits are those which arise from the peculiar relationship of the land in question to the public improvement, which will result from the taking. La. Highway Commission v. Grey, 197 La. 942, 2 So.2d 654 (1941). Special benefits are to be distinguished from general benefits (for which there is no setoff against severance damages). A general benefit is one which arises merely from the fulfillment of the public object which justified the taking; there is no particular relationship between the remaining property and the public improvement. State v. Marks, 188 So.2d 653 (La.App.4th Cir. 1966), Louisiana Highway Commission v. Grey, supra.
The foregoing general principles behind us we direct our attention to the case at hand.
The District Court found severance damages to both the land and the building. The Court of Appeal found severance damages to neither land nor building.
While we agree with the Court of Appeal that there were no severance damages to the land remainder we do find severance damage to such part of the building as was untouched by the property taken (i. e., the building exclusive of the front weight bearing wall).
In determining that there was no severance damage to the land remainder we are impressed by the testimony of the Highway Department's experts. Mr. Leroy Cobb, Mr. Carl Snyder and Mr. Max J. Derbes, Jr. testified that the northern portion of the the property, alone affected by the expropriation, had not lost access to Airline Highway in view of the fact that a service or frontage road was to be built along the subject property; that the property enjoyed an attractive location nearest to the interchange; and that the property had lost no utility, function, or desirability.
With respect to the building itself there is little question but that it suffered severance damage, due to the loss of its front weight bearing wall, therefore necessitating compliance with the zoning ordinance.
We believe that the proper method of ascertaining this severance damage to the building is to determine the difference in its market value caused by the taking. And, of course, this would be as of the trial date (in this instance, 1969). As earlier related there was testimony concerning this building remainder market value difference. We believe, however, that the clearest and most evident indication of this diminution in market value is the cost to a prospective purchaser to effect necessary reconstruction (of the front 40 feet of building, because of the East Baton Rouge Parish Zoning Ordinance), namely the $55,210.00 uncontroverted estimated cost, according to the construction expert witness, Mr. William M. Heroman.
Having found severance damage to the building we are now constrained to consider whether the State has adequately proven any special benefits which might be employed as an offset against such severance damages.
The matter of special benefits versus general benefits was strenuously "argued" both by counsel and their respective experts. Comparable sales in the vicinity indicated enhancement in value to property all along the Airline Highway in the vicinity of the I-12 interchange. While the Highway Department's experts, for differing reasons, testified to particular enhancement in value of the defendant's property because of its proximity to the interchange, defendant's experts on the contrary testified *322 that defendant's property enjoyed no greater benefit than other properties in the vicinity of the interchange (perhaps even less because of the disadvantage of a portion of the property being placed off the Airline Highway and on a frontage road); and that all such enhancement along the Airline Highway near the interchange was not identifiably the consequence of proximity to the interchange so much as general appreciation as a consequence of the coming of the highway.
We do not dispute that special benefits may occur by reason of possible commercial exploitation of land near an interchange. We find, however, in this case that the Highway Department has not adequately borne its burden of proving such special benefits to defendant's property. In this regard we agree with that portion of the trial court's finding to the effect that defendant's property received no benefits greater than or different from that of property in the general vicinity.
Accordingly, severance damage to defendant's building will not be disallowed or reduced in any measure.
We turn now to the question of costs. By judgment in the District Court the Louisiana Department of Highways was ordered to pay all costs of the proceedings as may be legally assessable against it. That part of the trial court judgment was affirmed by the Court of Appeal. Our affirmance herein of the Court of Appeal judgment serves likewise to impose upon the Department of Highways all costs in the trial court as are legally assessable against it. As we will explain below however, the Department of Highways can only be held liable for trial costs incurred by the defendant and stenographers' costs for taking testimony.
The Court of Appeal further declared that all costs of the appeal were to be equally shared by the parties.
The Department of Highways in complaining of this portion of the judgment directs our attention to La.R.S. 13:4521. It provides as follows:
"Except as hereinafter provided, neither the State, nor any parish, municipality, or other political subdivision, public board or commission shall be required to pay court costs in any judicial proceeding instituted or prosecuted by or against the state or any such parish, municipality or other political subdivision, board or commission, in any court of this state or any municipality of this state. ... This Section shall have no application to stenographers' costs for taking testimony."
They admit that the Department must pay costs incurred by the defendant in the absence of tender of an amount later determined to be just and adequate compensation. Westwego Canal and Terminal Co. v. Louisiana Highway Commission, 200 La. 990, 9 So.2d 389 (1942).
However, they point to our decision in State of Louisiana Through the Department of Highways v. Reimers, 249 La. 1044, 192 So.2d 558 (1966) as authority for limiting the Department's liability to those costs actually incurred by defendant, precluding their payment of any other costs, as per R.S. 13:4521.
They are correct. The Highway Department may not be cast for any costs incurred by them (other than stenographic costs for taking testimony), although they may be cast for all or a portion of costs incurred by the defendant.
Accordingly the judgment of the Court of Appeal is incorrect insofar as it imposes upon Department of Highway the obligation to pay one-half of all costs of the appeal.
The judgment insofar as it causes a sharing of the costs of appeal will be affirmed, only to the extent however of requiring that all costs of appeal incurred by the defendant shall be shared equally by the parties.
*323 In summary, we conclude that the monetary award of the Court of Appeal was correct. That is, $2,500.00 for the taking of the filter bed, concrete driveways and sign, $2,520.00 for the land taken and finally $55,210.00 as severance damages to the remainder of the building making a total award of just compensation in the amount of $60,230.00. This amount is, of course, subject to a credit for the deposit made by the Department of Highways in the amount of $4,484.00.
For the reasons assigned the judgment of the Court of Appeal is affirmed except that all costs of the appeal incurred by defendant shall be shared equally by the parties.
NOTES
[1] La.R.S. 48:441-460.
[2] The District Court's finding, which is not followed here, was that the diminution in market value of the building would amount to $30,000.00 even though the expert whom the District Court apparently relied upon in this regard testified that this diminution amounted to $36,465. In each instance here the presupposition is that the building would be sold as is, i. e., without corrective reconstruction. Furthermore, for purpose of this analysis the building's market value is conveniently ascertained exclusive of the land upon which it is situated, an unrealistic assumption but one which is possible for this theoretical analysis.