HOOD, Judge.
This is an expropriation suit instituted under LSA-R.S. 48:441, et seq., by the State of Louisiana, through the Department of Highways, against Reddell Creosote Company, Inc. Plaintiff deposited $13,070.00 in the registry of the court as the estimated value of the property taken. Defendant answered, claiming that the amount deposited is inadequate. Judgment was rendered by the trial court awarding defendant *723 the aggregate sum of $69,864.02, less the amount previously deposited. Plaintiff has appealed.
The issue presented is whether the award made by the trial court is excessive.
The order of expropriation was issued by the trial court in this proceeding on October 13, 1969. Immediately prior to that date, defendant owned a 20 acre tract of land in Evangeline Parish, on which it operated a creosote or wood preserving plant. The above mentioned order of expropriation granted to plaintiff the following property or rights : (1) The full ownership of 1.57 acres off the east side of the above mentioned 20 acre tract; and (2) a temporary construction servitude, covering an area 450 feet wide by a depth of 50 feet and comprising 0.52 of an acre, located adjacent to and immediately west of the above described 1.57 acre tract.
The property and the servitude being taken here were expropriated for use in relocating and constructing a part of the Mamou-Barber Spur Highway, on State Route La. 13, in Evangeline Parish. The construction of this highway was begun after the expropriation order was signed, and it was completed by July 7, 1970. The temporary construction servitude was abandoned on the last mentioned date, and all of the property affected by that servitude was returned to defendant at that time.
Prior to the taking involved in this suit defendant’s 20 acre tract of land was bounded on the east by the right-of-way of the Rock Island Railroad Company, on which right-of-way there is an existing railroad track running north and south. Defendant’s property had a frontage of 514.8 feet on that railroad right-of-way, and it extended westward from that right-of-way to a depth of about 1700 feet. At that time a public road, known now as “Old Highway 13,” ran north and south along the east side of the railroad right-of-way. Defendant had access to and from that previously existing highway by means of a private driveway or roadway which ran east and west, crossing the railroad track, and connecting the east boundary of defendant’s 20 acre tract with Old Highway 13.
The new highway, constructed after this expropriation suit was filed, runs north and south along the west side of the railroad right-of-way, between defendant’s remaining property and the railroad track. Since the construction of the new highway was completed, therefore, defendant’s property has had no frontage on the railroad right-of-way. The new highway is wider and better than the old one, however, and defendant has free access to that highway along the entire 514.8 foot frontage of its remaining land.
A one-cylinder creosoting plant was located on defendant’s 20 acre parent tract. The principal piece of equipment making up that plant was a one-door high pressure cylinder, in which the wood was treated. This cylinder was 105 feet long and five feet in diameter. It was located about midway between the north and south boundaries of the tract, the length of it running east and west, with the east end of it being a little more than 200 feet from the east boundary of defendant’s property before the taking. Other equipment making up the plant included a peeler, a .boiler, tanks, lifting devices, and narrow gauge tram tracks. The peeler, which served to strip the bark off of the timber before it was treated, was located in the northern part of the 20 acre tract, about midway between the east and west boundaries. One narrow gauge track ran east and west through the center of the property, leading into the only door of the cylinder located in the west end of it. This track was used to convey materials into the cylinder for treatment. Two spurs joined or tied into the above mentioned center track at points a few feet west of the cylinder. One of the spurs ran in a northwesterly direction from that junction, through or near the peeler. The other spur ran southwest from its junction with the center track, to the southern part of defendant’s property.
*724 Before the taking, defendant’s 36 x 26 foot office building was located in the extreme eastern part of the tract, about midway between the east end of the cylinder and the eastern boundary of defendant’s land. The office building thus was directly in front of the eastern entrance to the plant property.
Although the subject property abutted the railroad right-of-way prior to the taking, defendant did not have a regular gauge spur track on its property, and it has never used the railroad for shipping purposes. The shipping or transporting of materials to or from the creosote plant has always been by trucks or trailers, which travel on the public highways.
The 1.57 acres taken in full ownership by plaintiff comprises the east 135 feet of defendant’s 20 acre parent tract. The temporary construction servitude taken here covered and affected an area located immediately west of and adjoining the 1.57 acre tract. Some improvements were located on the land included in this taking, all of which improvements consisted of the above described office building, fences, a cattle guard, some gravel surfacing and some concrete.
Four qualified real estate appraisers expressed opinions as to the value of the property taken. Two of them, Darrel V. Willet and Stanley A. Tiger, testified in behalf of the Department of Highways, and Charles L. Buller and Hasker Garland testified in behalf of defendant.
Mr. Willet felt that the 1.57 acre tract had a value of $1113.00 at the time of the taking, and that the temporary servitude had a value of $30.00. He appraised the gravel on the surface of the property taken at $10,340.00, and all other improvements located on the land expropriated at $6,607.00. He found that defendant had sustained no severance damages, and he concluded that the total value of all of the property and rights expropriated herein amounted to $18,090.00.
Mr. Tiger, the other appraiser called by plaintiff, valued the property taken in full ownership at $954.00, the temporary servitude at $31.00, the gravel at $7,743.00, and all other improvements on the expropriated land at $6,762.00, all of which amounts to the aggregate sum of $15,490.00. He also felt that defendant had sustained no severance damages.
Mr. Buller and Mr. Garland, the two appraisers called by defendant, valued the property taken at $1590.00, and they concluded that defendant’s remaining land decreased in value $11,056.00 as a result of the taking. They felt, therefore, that defendant was entitled to an award of $12,646.00 solely for the value of the land taken and for severance damages to the remaining land. These appraisers made no attempt to value the improvements located on the expropriated property, and they expressed no opinion as to the value of the creosoting plant or as to the cost of moving it. They testified, however, that if it should be necessary to move the plant to another location on defendant’s remaining property, then the value of the remaining property, with all improvements including the creosoting plant, would have to be reduced by the cost of moving that plant.
In determining the amount of severance damages sustained by defendant, Mr. Bul-ler and Mr. Garland reasoned that the 20 acre tract had a value of $1,000.00 per acre prior to the taking, since its highest and best use was for industrial purposes. They felt, however, that the remaining property had a value of only $400.00 per acre after the taking, because thereafter it had no railroad frontage and was best suited for agricultural purposes.
Other expert witnesses, testifying on behalf of defendant, stated that the property taken included a prime loading area of the creosoting plant, and that the plant could not be operated successfully after the taking unless the entire plant was moved back, or west, on the property a distance of 135 feet. One expert estimated the cost of *725 moving the plant that distance to be $40,-116.02.
The trial judge concluded that defendant was entitled to recover the following amounts from plaintiff:
Value of land taken. $ 1,590.00
Value of improvements taken. 17,102.00
Severance damage to property-taken. 11,056.00
Cost of moving equipment back on property. 40,116.02
Total. $69,864.02
It is apparent that the trial judge accepted the testimony of Mr. Buller and Mr. Garland as to the value of the land taken and severance damages. He accepted the testimony of Mr. Willet as to the value of the surface gravel on the property expropriated, and the testimony of Mr. Tiger as to the value of all other improvements included in the taking. We cannot say that the trial court erred in accepting the testimony of these various experts as to these items, and we thus affirm that part of the judgment appealed from which awards defendant the aggregate sum of $29,748.00 for the value of the property taken, the improvements on that property and severance damages.
We are unable to agree with the trial court, however, that defendant is entitled to recover the cost of moving the creosoting plant to another part of its property.
Curley Courville, manager of defendant’s plant, testified that treated posts were stored in the eastern part, and particularly in the northeastern corner, of defendant’s original 20 acre tract, and that that area was used for loading these posts into trucks. He stated that as a result of the taking of the east 135 feet of the parent tract large trucks .cannot maneuver in the front or eastern part of the remaining property, and that it is now necessary to store the treated posts on other parts of the land, making it more expensive, difficult and time consuming to load them on trucks. He feels that the plant cannot be operated as efficiently now as it had been operated before the taking unless it is moved back 135 feet, thus allowing defendant to resume using the eastern part of the property for loading purposes.
Courville concedes that the plant has continued to operate since the taking in the same manner as it operated before, although none of the plant equipment or facilities have been moved. The only moving or rearranging which has been required, he testified, was that a “little bit” of the stock of treated fence posts had to be moved west from the former storage area of those posts in the eastern part of the original tract. The evidence shows that there is plenty of storage space on defendant’s remaining land, but we understand Courville’s testimony to be that since the taking of the east 135 feet of the parent tract large trucks do not have room to maneuver between the newly located east line of the property and the nearest piece of plant equipment. The nearest piece of plant equipment is a water tank, and it is located 59 feet from the east line of defendant’s remaining property.
Charles J. Kerns, an expert management consultant, examined defendant’s plant after the taking and concluded that it cannot be operated at 100 percent efficiency unless it is moved back 135 feet west. He testified that in order to conduct efficient loading operations defendant needs “a minimum of a one hundred foot clear radius around this tractor-trailor rig, whether they are loading or unloading,” and that it does not have this needed room since the taking. He felt that the change in the loading area would cause 60 percent loss of production in the plant, and that the plant would go bankrupt unless it is moved back that distance. In his opinion, a prospective purchaser of the plant now would determine the cost of moving it, and he would deduct that cost from the purchase price. The testimony of Kerns is *726 supported by that of Ray Teddlie, who is sales manager for a creosoting plant in Colfax, Louisiana.
An engineer called by defendant estimated that it would cost $40,116.02 to move the plant.
Both of the appraisers called by plaintiff used the “before and after” rule in determining severance damages, and both concluded that defendant sustained no such damages as a result of the taking. Mr. Willet found that defendant’s 20 acre tract, with all the improvements on it, had a value of $132,250.00 before the taking, that the property taken had a value of $18,090.00, and that the value of the remaining property is the difference between these two figures, or $114,160.00. He concluded, therefore, that no severance damages were sustained by defendant. Mr. Tiger valued the parent tract, with improvements, at $106,000.00, and he appraised defendant’s remaining property at $90,570.00, the difference between those two figures being the value which he placed on the property taken.
Francis M. Seale, president of a creosoting plant in Hammond, Louisiana, examined defendant’s plant and concluded that it could be operated as efficiently after the taking as it could before, without moving any part of the plant equipment. He testified that the plant was not designed for a material “flow to the east,” as stated by Courville, but that instead “it was designed to flow in and out of the cylinder,” since the treating cylinder had only one door at its west end and all materials had to enter and leave the cylinder through that single door. He stated that the plant was planned so that the untreated materials would flow from the west to the east, over the center or north spur track and into the treating cylinder. After those materials have been treated, however, they then must be pulled back west, out of the door of the cylinder, and from that point they are transported to the storage area. He testified that the normal way to operate a plant of this type and design is to transport the treated materials from the cylinder over the southwest tram track to the south part of the plant site for storage. He feels that the plant could be operated at least as economically and efficiently as it was before the taking, by simply storing and loading the treated materials in the south part of the plant site, rather than in the east or northeast part of it, and that it is not necessary to move any of the plant equipment.
Lloyd Rockhold, a civil engineer and construction consultant, examined defendant’s creosoting plant after the taking, and he also concluded that the plant could be operated as efficiently today, without moving any of the equipment, as it could have been operated before the taking.
The creosoting plant has been operating continuously since the taking, although none of the equipment has been moved. A fence has been constructed along the east boundary of the remaining tract, and a gate or opening in that fence has been installed at a point slightly northeast of the location of the cylinder. This gate is being used as the entrance to the plant property.
The evidence convinces us that the creosoting plant was designed so that the treated materials could be stored on the south side of the plant, and that it would be more economical and efficient to store and to load the treated materials in that area rather than in the east or northeastern part of the property. For that reason alone we are convinced that it is not necessary that this plant be moved to allow defendant more room for storage and loading in the eastern part of the plant site.
Assuming, however, that defendant does need to store some of his treated materials in the east or northeastern part of the property, we think the evidence shows that after the taking trucks could be loaded or unloaded in those areas without loss of efficiency.
A water tank which constitutes a part of the plant equipment is located 59 feet from *727 the east line of the remaining property. Defendant argues that this space is too narrow to permit large trucks to maneuver for loading and unloading in the eastern or front part of the property. Its expert, Mr. Kerns, testified that a large truck-tractor of the type used to haul defendant’s products needs a minimum radius of 100 feet for loading and unloading operations. On that basis he concluded that the plant could not operate successfully after the taking because thereafter it did not have that much loading area across the eastern or front part of the plant property.
Prior to the taking, the water tank was located 194 feet from the east line of the plant property. Defendant’s office building was situated between the water tank and the east boundary of the original 20 acre tract. The west wall of the office building was 55 feet east of the water tank, and since the office was 36 feet long, the front of the office building obviously was 103 feet from the east line of the plant property. Trucks thus did not have a “minimum radius of 100 feet” within which to operate between the water tank and the east line of the property before the taking. If we are to accept the conclusions reached by Mr. Kerns, therefore, we must find that trucks were not able to conduct loading and unloading operations efficiently even before the new highway was built, and that the creosoting plant, in fact, has never been able to operate successfully.
We realize that a substantial amount of room would be required to maneuver large trucks, and we agree that it would be difficult, or perhaps impossible, to conduct loading operations efficiently on such a truck in the 59 foot wide area directly between the water tank and the east line of the property. The evidence shows, however, that there is still ample room in the northeast and southeast parts of the plant property, as well as in several other parts of it, to conduct loading operations, and we know of no reason why those operations cannot be conducted as economically and as efficiently as they were before the taking. The record does not show that it has ever been necessary, either before or after the taking, for the loading of these trucks to be conducted immediately between the water tank and the east line of the property. We assume that the trucks were not loaded there before the taking because of the presence of the office building in that immediate area. Our conclusion is that the loading can still be conducted in the northeast and southeast portions of the remaining property as efficiently as they were conducted in the corresponding areas of the original tract of land.
There are other facts which support our conclusion that it is not necessary to move the creosoting plant back on defendant’s remaining property. One is that if more room actually is needed in the east central part of defendant’s remaining property for loading purposes, then the needed extra room might be obtained by simply moving the water tank back — at least as far as the east end of the treating cylinder. The plats and photographs introduced in evidence indicate that the moving of that tank alone should give from 20 to 30 feet more space .between the east line of the property and the nearest piece of plant equipment. The space between those two points then would approach that which existed between the front of the office building and the east line of the property before the taking. No evidence was presented showing the cost of moving only the water tank.
Another factor which we have considered is that defendant now has access to the new highway at any point along its entire frontage, and it is no longer necessary for there to be a single gate or entrance to the plant. It appears to us that the locating of the plant entrance at another point, or the installation of other gates to the plant area, would solve all of the problems which have been suggested by defendant relative to the loading of the trucks.
After considering all of the evidence, we have concluded that the expropriation involved here did not make it necessary for defendant to move its creosoting plant. *728 We are convinced that defendant can continue to operate the plant now at least as economically and as efficiently as it was possible for it to be operated before the taking.
The severance damage allowable as a result of the expropriation under LSA-R.S. 48:441, et seq., is the difference between the market value of the defendant’s remaining property immediately before the taking and its diminished value as of the date of the trial. The severance damages to the remaining property cannot be presumed, and such damages will not be awarded unless the owner shows by competent evidence that the value of its remaining land has been diminished by the taking. State Through Department of Highways v. DeRouen, 256 La. 947, 240 So.2d 717 (1970); State Through Department of Highways v. Thurman, 231 So.2d 692 (La.App. 1 Cir. 1970); State Through Department of Highways v. Mouledous, 200 So.2d 384 (La.App. 3 Cir. 1967). The landowner has the burden of proving not only that severance damages have been sustained but also the amount thereof. Michigan Wisconsin Pipeline Company v. Fruge, 227 So.2d 606 (La.App. 3 Cir. 1969).
Applicable here also is the rule that the cost of removal or relocation of a building or other facility is not a proper measure of assessing severance damages, except in most unique situations. Such costs may be considered, however, solely to determine whether there has been a diminution in the market value of the remaining property as a result of the taking. State Through Department of Highways v. Mason, 254 La. 1035, 229 So.2d 89 (1969).
In the instant suit defendant has failed to show that it will be compelled to move its creosoting plant because of the taking. It thus has failed to show that its remaining property has been diminished in value by the cost of moving the plant equipment. In our opinion the evidence establishes affirmatively that defendant’s remaining property has not diminished in value as a result of this expropriation. We conclude, therefore, that the trial court erred in awarding defendant $40,116.02 as the cost of moving the plant equipment.
For the reasons herein assigned, the judgment appealed from is amended by reducing the award made to defendant, Reddell Creosote Company, Inc., from $69,864.02 to the sum of $29,748.00, less $13,070.00 previously deposited with the registry of the court. In all other respects the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellee.
Amended and affirmed.