CULPEPPER, Judge.
This case was consolidated for trial and appeal with State of Louisiana, through the Department of Highways v. Wellan’s, Inc., La.App., 279 So.2d 785, in which a separate judgment is being rendered by us this date. Both are suits under LSA-R.S. 48:441 et seq. to expropriate portions of defendants’ properties to construct a new route for Louisiana State Highway No. 1 through the City of Alexandria.
In the present case, the State deposited $12,153, of which $11,929 represented the value of the land and improvements taken, and $224 represented severance damages. The defendants answered claiming compensation and severance damages totaling *783 $27,852.27. After a trial on the merits, the district judge awarded $18,933.06, less the sum deposited, of which $17,894.64 represents the value of the land taken, $493.55 represents severance damages of 100% to a small triangular remainder, and $544.87 represents the cost of certain concrete work done after the taking in order to continue the use of the remaining property as a parking lot. The defendants appealed. The State answered the appeal.
Defendants’ principal contention on appeal is that the district judge erred in denying severance damages of 25% to the large remainder located north of the new highway route. In its answer to the appeal, the State contends the award of $4 per square foot for the land taken and the award of $544.87 for the concrete work are excessive.
The general facts are that before the taking the parent tract fronted approximately 84 feet on the south side of Third Street and ran back in a southerly direction between parallel lines a distance of about 214 feet to Fourth Street. The property was bounded on the west by St. James Street and on the east by the property involved in the companion suit. The entire tract was being used as a concrete parking lot, containing 18,063 square feet. All of the experts agree this is its highest use.
At the time of the taking, Third Street was one-way to the east and Fourth was a two-way street. As part of the construction project, Fourth Street was changed to one-way, also to the east. The new highway route connects Fourth Street to Third Street. It is about 50 feet wide and runs diagonally from the southwest corner to the northeast corner of the city block in which the subject property is located. A total of 3,848.31 square feet was taken. There is a north remainder of 14,108.13 square feet, which no longer has access to Fourth Street but does have access to the new State Highway route, and retains its access to Third and St. James Streets. There is also a small triangular remainder of -106.14 square feet located south of the new highway route, in the extreme southeast corner of the property.
The first issue is the value of the land taken. The State’s experts, Mr. M. C. Gehr and Mr. T. J. Toups, cited certain comparable sales to support their appraisal of $2.45 per square foot. The defendants’ experts, Mr. Hab Monsur and Mr. W. C. Webb, cited comparable sales to support their valuation of $4 per square foot. All of the experts agreed that the concrete slab on the existing parking lot has a value of sixty-five cents per square foot.
We have carefully studied the record and find the evidence fully supports the trial judge’s conclusion that the comparable sales used by defendants’ experts are entitled to more weight. At $4.65 per square foot for the land and the concrete slab, the award for the 3,848.31 square feet taken is $17,894.64, as the trial judge held.
One of the State’s arguments as to the value of the land taken is that in State, Department of Highways v. Field, 257 So.2d 814 (3rd Cir. 1972) we reduced an award of $4 to $3 a square foot for the property adjoining on the east the tracts of land involved in these companion cases. As a general rule, reliance on factual holdings in other cases is not favored in the law, since each case depends upon its own evidence, State of Louisiana, Through Department of Highways v. DeRouen, 256 La. 947, 240 So.2d 717 (1970). Furthermore, a comparison of the evidence in the Field case with that in the present cases shows there are clear grounds for distinction. At the time of the taking houses were located on the Field property and it was being used for residential purposes. Additionally, the Field property is located farther from the business section of Alexandria. Mr. Monsur, one of defendants’ experts in the present case, also testified in the Field case. It was he who appraised the Field property at $3 per square foot. Yet he appraised the present property at *784 $4. Apparently, he thought the difference in the properties required different valuations. We find this reasonable. We agree with the trial judge that the factual findings in the Field case are not controlling here.
The next issue is severance damage to the remainder of 14,108.13 square feet lying north of the new highway route. The State’s appraisers allowed no severance damage for this remainder. Mr. Monsur, one of defendants’ experts, found this remainder suffered severance damages of 25%. His reasoning is as follows:
“Originally, the property had access from three streets, Third, Fourth and St. James. Presently the access is from Third and St. James. Also, at the time of the taking when this property enjoyed “access from three streets, Fourth Street had two-way traffic on it. At the present — which made people coming from south coming down from the south that wanted to get into this property they could just come down Fourth Street and whip right in. Then, likewise, the people going south coming from the north on Fourth Street could whip right into the property. As it is now, the street is one-way and if you are coming down Fourth Street going south the only access you have would be to turn into St. James and then cut into the property. Coming from the north you have to come down Main Street — or coming from the south, going north, you’d have to come down Main Street and then whip in. In addition to losing one of its three access entrances, the property is now irregularly shaped which doesn’t lend itself to maximum utilization as far as the parking lot is concerned. Another thing is, it’s been reduced in size which is — now the property it’s not economically feasible for the owners to operate a parking lot with a paid attendant there. These are the reasons I depreciated it — damaged it 25%.”
The district judge apparently concluded that one of Mr. Monsur’s reasons for finding severance damage to the north remainder was the changing of Fourth Street from a two-way to a one-way street. As a general rule, there can be no recovery for that part of the diminution in value of property which is attributable to the diversion of traffic, since this is an exercise of police power which affects all property owners in the area, Patin v. City of New Orleans, 223 La. 703, 66 So.2d 616 (1953); Rudolph Ramelli, Inc. v. City of New Orleans, 233 La. 291, 96 So.2d 572 (1957) and the authorities cited therein. Under these authorities, defendants in the present case cannot recover for any part of the diminution in value of their remaining property caused by the change of Fourth Street from a two-way thoroughfare.
As an additional reason for severance damage to the north remainder, Mr. Mon-sur cited loss of access to Fourth Street. But the facts show that although access to Fourth Street is lost, the north remainder now has some access to the new State Highway route. Also, the property is still easily accessible from Fourth Street by turning into St. James Street.
In our view, the most serious grounds for severance damages to the north remainder is the fact that, due to its irregular shape after the taking, some parking space will be lost. But the evidence does not show how much of the 25% severance damages claimed is attributable to this factor. Considering the record as a whole, we find no manifest error by the trial judge in his refusal of severance damages to the north remainder.
The final issue concerns the award of damages in the sum of $544.87, representing the cost of repairing certain portions of the concrete slab and curbing after the taking. The. State contends the estimate of $145 by its expert for these repairs should be used. The defendants in *785 troduced testimony to show that the entire cost for these repairs to the subject property in this and the companion case was $1,452.21. Of this, the district judge attributed $544.87 to the property in the present case. We find no error in this regard.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff insofar as costs may be assessed against a state agency.
Affirmed.