278 So.2d 525 (1973)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff and Appellant,
v.
Alfred DAIGLE, Defendant and Appellee.
No. 4092.
Court of Appeal of Louisiana, Third Circuit.
May 30, 1973.
Dissenting Opinion June 8, 1973.
Edwin R. Woodman, La., Dept. of Highways, Baton Rouge, for plaintiff-appellant.
Domengeaux & Wright, by W. Paul Hawley, Lafayette, for defendant-appellee.
Before SAVOY, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
Plaintiff expropriated a portion of defendant's farm under LSA-R.S. 48:441 et seq. for the construction of Interstate Highway No. 10. At the time of the taking, plaintiff deposited $1220 as compensation and damages. Defendant answered, seeking an increase. After a trial on the merits, the district judge awarded defendant $2,992.75 for the property taken and *526 severance damages, subject to a credit for the amount deposited. Plaintiff appealed.
The issue on appeal is whether the award is excessive.
The parent tract was situated in a rural area about 1¼ miles west of the town of Henderson. It contained 14.386 acres, had a frontage of 300 feet on the north side of Louisiana State Highway No. 352, and ran back in a northerly direction between parallel lines approximately 1900 feet. Defendant's home and several outbuildings were located near the highway. The rear portion was being used for pasturage and truck farming.
The plaintiff expropriated a strip of land about 300 feet wide running east and west approximately through the center of the parent tract. The 2.310 acres taken will be used for the construction of a four-lane, no access thoroughfare.
The new highway will divide defendant's property into two separate tracts. The remaining property lying south of the new highway contains 4.586 acres. The remaining tract lying north of the new highway contains 7.49 acres. No improvements were taken except a small portion of a barbed wire fence.
Another highway, State Route No. 347, runs north and south and is located about 1,000 feet west of the parent tract. It intersects Highway 352 on which defendant's home is located. The new interstate highway crosses Highway 347. There is an overpass and a traffic interchange, enabling motorists on Interstate Highway 10 to reach Highway 347.
The first issue is the value of the 2.31 acres taken. The State's appraisers, Stanley Tiger and Sam Kennedy, found that the frontage of the parent tract on Highway 352, to a depth of 200 feet, was best suited for rural homesites and had a value of $2,000 per acre. The rear portion of the parent tract was found to be best suited for agricultural purposes, with a value of only $325 per acre. These experts found the parent tract had an average per acre value of about $500. Using this average per acre value, they concluded the 2.31 acres taken had a market value of $1,155.
The defendant's experts, Mr. William O. Clause and Mr. Maxie Roberts, used only the average per acre method of appraisal. They found the parent tract had a value of $1,000 per acre. On this basis they concluded the 2.31 acres taken had a value of $2,310.
The trial judge, in an effort to give effect to the testimony of each expert witness, concluded the parent tract had an average value of $700 per acre before the taking. Thus, he concluded the 2.31 acres taken had a value of $1,617.
Our jurisprudence is now established that when there is partial taking of a parent tract, which has multiple highest and best uses, the award for the part taken must be based on its own highest and best use, rather than the average per acre value of the entire parent tract. If there was any doubt about this rule following State v. Landry, 171 So.2d 779 (3rd Cir. 1965) writ refused, 247 La. 676, 173 So.2d 541 (1965), the question has now been settled in recent cases applying the front land rear land method in highway widening situations. See State, Department of Highways v. Mertens, 273 So.2d 555 (3rd Cir. 1973) and State, Department of Highways v. Goudeau, 276 So.2d 923 (3rd Cir. 1973) and the cases cited therein.
Consistent with this rule, the 2.31 acres taken in the present case must be valued on the basis of its own highest and best use, which is for truck farming and pasture. The experts fixed this value at $325 per acre. Thus, the 2.31 acres taken has a value of $850.75. The award for the land taken must be reduced to this amount.
The evidence fully supports the trial court's finding that the portion of the fence destroyed had a value of $65.
*527 The final issue is the award for severance damages. There is no dispute as to the south remainder of 4.586 acres, which fronts on Highway 352 and on which defendant's home and outbuildings are located. All of the experts agreed there are no severance damages to this remainder, and the trial judge was clearly correct in so holding.
However, the State contends the district court erred in awarding severance damages of $1,310.75 to the 7.49 acres remaining north of the new highway. Both of the appraisers called by plaintiff felt that defendant's remaining property located north of the new highway increased, rather than decreased, in value as a result of the expropriation, and that defendant thus is not entitled to recover severance damages. The two experts offered by defendant concluded that the remaining property on the north side of the new highway was reduced in value from $1,000 to $365 per acre as a result of the taking. They based that conclusion on the fact that the north 7.49-acre tract was relatively small, that no water was available on it for watering crops, and that after the taking defendant had to travel a greater distance from his home in order to reach and to cultivate it.
Defendant testified that prior to the taking he raised cabbage, onions and corn on the north 7.49 acres of the parent tract, and that since water was available only on the south part of his land, he hauled water from the south a distance of from 1,000 to 1,900 feet over his land, to water those crops. He stated that as a result of the taking he has discontinued raising cabbage and onions on the north remainder, limiting his crop to corn in that area, because of the inconvenience of traveling a longer distance, over public highways, to haul water to that north 7.49-acre tract.
The evidence shows that access to the north 7.49 acre tract is provided by a public gravel road which runs east and west a distance of 920 feet, from the east side of Louisiana Highway 347 to the west boundary of defendant's north remaining property. In order for defendant to reach his north remainder from his home after the taking, it will be necessary for him to travel west on Highway 352 a distance of about 1,300 feet, then north on Highway 347 a distance of about 1,800 feet, and then east on the above mentioned public gravel road a distance of 920 feet to the north remainder. Defendant thus will have to travel a distance of about 4,000 feet after the taking, as compared to a distance of 1,000 to 1,900 feet before, in order to reach the north 7.49-acre remaining tract.
We agree with defendant that the traveling of this additional distance will cause him some inconvenience. Inconvenience to the landowner, diversion of traffic or change in attending conditions, however, are not proper elements of severance damages unless they diminish the value of the owner's remaining property. State, Department of Highways v. Salassi, 244 So. 2d 871 (La.App. 1 Cir. 1971).
The severance damages allowable as the result of an expropriation under the "Quick Taking" statute is the difference between the market value of the remaining property immediately before the taking and its diminished value as of the date of trial, LSA-R.S. 48:453. Severance damages to the remaining property cannot be presumed, and such damages will not be awarded unless the owner shows by competent evidence that the value of his remaining land has been diminished by the taking. State, Department of Highways v. Dodge, 168 So.2d 430 (La.App. 3 Cir. 1964); State, Department of Highways v. Mason, 254 La. 1035, 229 So.2d 89 (1969); Michigan Wisconsin Pipeline Company v. Fruge, 227 So.2d 606 (La.App. 3 Cir. 1969); State, Department of Highways v. Reddell Cresote Company, 252 So.2d 721 (La.App. 3 Cir. 1971).
The appraisers called by plaintiff testified that prior to the taking the north 7.49-acre remaining tract was best suited for *528 agricultural purposes, but that as a result of the taking its highest and best use changed to highway commercial use, with a greater value. We think their testimony is supported by the evidence.
The record shows that exits have been or are being constructed at the intersection of Interstate 10 with Louisiana Highway 347, so that motorists traveling in any direction will be able to get off or on any of those highways easily at that crossing. The property located at or in the immediate area of that intersection apparently has become valuable for commercial purposes. Defendant's 7.49-acre remaining property is located adjacent to Interstate 10 and within 1,000 feet of the above mentioned crossing.
On February 10, 1968, which was shortly after this expropriation proceeding was filed, an 11.73-acre tract of land located immediately west of and adjoining defendant's north remainder was sold to Humble Oil and Refining Company for the sum of $75,000, or for a price of $6,394 per acre. The property conveyed by that sale was bounded on the west by Louisiana Highway 347, on the south by the right of way for Interstate 10, and on the east by defendant's 7.49 acre remaining tract. The tract sold to Humble is separated from defendant's property only by a fence.
Humble has retained ownership of 1.44 acres of the above mentioned property, being the part which is immediately adjacent to the intersection of Interstate 10 and Highway 347. On May 21, 1971, however, it sold all of the remaining part of the above mentioned tract, comprising 10.29 acres and extending from Highway 347 to the west line of defendant's property, for a price of $6,706 per acre.
Another tract of land comprising 0.67 acre located in the southwest quadrant of the intersection of Interstate 10 and Highway 347 sold for $74,627 per acre on February 16, 1970.
On July 22, 1968, a 14.67-acre tract of land located 1,300 feet east of the east line of defendant's property was sold for a price of $681.66 per acre. The property conveyed by that sale is located on the north side of and adjacent to Interstate 10, as is defendant's property, but it is much further from Highway 347, or any other heavily traveled accessible highway, than is defendant's remaining property. The experts called by plaintiff stated that defendant's remaining property is better located and more valuable than the land which sold for $681.66 per acre. They feel that defendant's north remainder at least doubled in value as a result of the taking.
After considering the above described comparable sales and the testimony of all of the witnesses, we find that defendant's remaining property located north of the new highway increased, rather than diminished, in value as a result of the taking. We cannot agree with defendant or with the trial judge that defendant's north remaining property was worth only $525 per acre after the taking, when the evidence establishes that the land lying immediately west of and adjacent to it is worth $6,706 per acre. Our conclusion is that the trial court erred in holding that defendant's north remainder was diminished in value by the taking. The judgment appealed from must be amended, therefore, to delete the award of severance damages to defendant.
Recapitulating, we find the value of the 2.31 acres taken is $850.75, and the value of the portion of the fence destroyed is $65, for a total of $915.75. There are no severance damages. Although the $1,220 deposited exceeds the compensation to which defendant is entitled, the plaintiff has requested only that the excess award by the trial court be reversed. Plaintiff does not seek reimbursement under LSA-R.S. 48:456.
For the reasons assigned, the judgment appealed is reversed and set aside. Judgment is now rendered in favor of the *529 plaintiff rejecting defendant's demands for compensation and damages in excess of those deposited. All costs in the lower court, as well as the costs of this appeal are assessed against the defendant appellee.
Reversed and rendered.
HOOD, J., dissents in part and will assign written reasons.
HOOD, Judge (dissenting).
I agree with the conclusions reached by my colleagues on all issues, except that I cannot agree that the award made by the trial court for the value of the property taken should be reduced.
The trial judge found that defendant's parent tract had a value of $700.00 per acre. He applied the average land value rule and awarded the landowner the sum of $1,617.00 for the 2.310 acres taken. I think the evidence fully supports that award made by the trial court, and I would affirm it. In my view, the majority has erred in applying the front land-rear land rule, in concluding that the property taken had a value of only $325.00 per acre, and in reducing the trial court's award for the property taken to $850.75.
I also disagree with the statement that the front land-rear land rule, rather than the average land value rule, has become the established jurisprudence of this state. That issue is before our Supreme Court now, and I assume that will be setted soon. As of now, however, there is a conflict in the jurisprudence as to which rule should be applied.
In the recent case of State, Department of Highways v. Beauregard Development Co., Inc., La.App., ___ So.2d ___, we applied the average land value rule, although a specific statement to that effect was not included in the opinion. The majority determined that the entire 223.6 acre parent tract involved there was composed of three different classes of land, based on different physical characteristics, and that each class had a different average per acre value. The 18.604 acre strip of land taken, running through the center of the parent tract, was on a "ridge" which we valued at $2,000.00 per acre. The 135 acres lying west of that ridge was "hilly with occasional ravines," and was valued at $1,000.00 per acre. The 70 acre tract lying east of the ridge was composed of the only level land in the parent tract, and it was located nearer utilities and the highway, so the majority placed an average value of $3,000.00 per acre on that entire 70 acres, although it had a frontage of 1,338 feet on the only highway which abutted any part of the entire parent tract before the taking. There was no suggestion, and we did not find, that that part of the 70 acres which fronted on the highway, to an ideal depth of the usual 200 feet, was worth substantially more than the rear property, or that the rear property within that 70 acre tract was worth very little. Neither did we find that the "ridge" property which was taken was practically worthless because it was also rear land. We found that the entire 70 acres had an average value of $3,000.00 per acre, regardless of the fact that the east end of it fronted on a highway and despite the circumstance that the land immediately on the other side of that highway had been sold and developed for commercial or industrial purposes. We thus applied the average land value rule in that case.
The theory of the front land-rear land rule is that if the front land, to a depth of 200 feet (or some other ideal depth), should be sold, then the remaining property would be forever cut off from any kind of access to a public road, and thus the rear property would be worth very little. I have consistently disagreed with any such theory. But, even if that theory were sound, it cannot logically be applied here, because if the front 200 feet of defendant's parent tract should have been sold off separately, access to the rear property would have existed by means of another existing *530 public road, and there thus would have been no decrease in value of the rear property as found by the majority.
I think the rule applied in the Beauregard Development Company case should be applied here. In this case defendant's parent tract was not composed of different classes of land. In my opinion his parent tract had an average value of $700.00 per acre, as found by the trial court. I believe the award made by the trial court for the property taken based on that average value should be affirmed.
For these reasons I respectfully dissent.