279 So.2d 787 (1973)
STATE, DEPARTMENT OF HIGHWAYS, Plaintiff-Appellee,
v.
BEAUREGARD DEVELOPMENT CO., INC., Defendant-Appellant.
No. 4203.
Court of Appeal of Louisiana, Third Circuit.
May 30, 1973.
Rehearing Denied June 29, 1973.
Writ Refused August 31, 1973.
*788 Gist, Methvin & Trimble by DeWitt T. Methvin, Jr., Alexandria, for defendant-appellant.
Johnie E. Branch, Jr., Baton Rouge, for plaintiff-appellee.
Before SAVOY, HOOD and MILLER, JJ.
MILLER, Judge.
On August 6, 1968 the State Department of Highways (under the "Quick Taking Statute", LSA-R.S. 48:441 et seq.) expropriated 18.604 acres from the approximate center of defendant Beauregard Development Co., Inc.'s 223.6 acre tract. The taking was for a limited access four lane divided highway built to interstate standards. After the taking Beauregard owned 70 acres east of the right of way, 135 acres west of the right of way, and .425 of an acre north of the right of way. At the time of the taking, the State deposited $38,208 ($2,000 per acre) for the 18.604 taken acres, and denied that severance damages were due. Beauregard filed answer following completion and acceptance of the highway, claiming severance damages of $250,000 plus.
The parties stipulated that the taken tract was worth $2,000 per acre. Beauregard appeals the trial court award of $14,005 in severance damages together with the disallowance of a substantial portion of the fees paid by Beauregard to its experts. We affirm.[1]
Beauregard's basic complaints are that the remaining 135 acre tract to the west of the right of way was landlocked rather than served by a service road (as found by the trial court), and that the original tract was industrial or commercial rather than residential property (as found by the trial court). The trial court's factual determination of each issue is well supported by the record.
In 1967 Beauregard sold 89 acres off the eastern end of the subject tract to Proctor and Gamble for a price of $1,750 per acre. P & G used this tract along with other adjacent tracts to construct a manufacturing plant. The tract sold by Beauregard to P & G had extensive frontage on U.S. Highway 165, frontage on a state road known as the "Pardue Road", and frontage on the railroad. Following the sale to P & G, Beauregard's tract (which is the subject tract) was classed as 223.6 acres of unimproved pine hill land situated near the Kingsville community some two miles northwest of Pineville. The irregularly shaped 223.6 acre tract was roughly 1338 feet north and south by 6,000 feet east and west. The eastern portion fronted 1338 feet on "Pardue Road" and there was no other ingress or egress. The western boundary was near but not adjacent to a railroad track. The expropriated 18.604 acre road right of way followed a ridge which coursed northwesterly and southeasterly through the tract. The remaining 70 acre tract to the east was almost level and retained its entire 1338 foot frontage on "Pardue Road". The remaining 135 acre tract to the west was hilly with occasional ravines and after the taking was served by a newly constructed service road which coursed for a distance of ½ mile alongside the limited access highway until it reached the U.S. 165 entry onto the limited access Pineville Alexandria bypass road.
Beauregard contends that the service road does not serve its remaining 135 acre tract because the paved portion terminates some ten to thirty feet short of Beauregard's tract. It was established that *789 the dedicated service road right of way extended to Beauregard's tract and that the paved portion of the road could not be extended closer to Beauregard's tract without damaging Beauregard's fence and trespassing on Beauregard's tract. To develop the 135 acre tract prior to the expropriation, Beauregard would have had to construct a road from the tract across its 70 acre tract a distance of some 1,000 feet in order to reach the "Pardue Road". After the expropriation, Beauregard had a paved two way access road constructed to within 10 to 30 feet of the 135 acre tract and a dedicated road right of way adjacent to that tract. Reasonable ingress and egress is all that is required. State ex rel. Gebelin v. Department of Highways, 200 La. 409, 8 So.2d 71 (1942). The trial court's determination that Beauregard's tract was not landlocked was manifestly correct.
The trial court's finding that the highest and best use of Beauregard's property both before and after the expropriation was for residential development is also manifestly correct. Beauregard's expert witnesses Hab Monsur and W. C. Webb were of the opinion that the 223.6 acre tract was commercial rather than residential. They pointed to the P & G plant constructed nearby; to the Dupont plant which was one-fourth mile away and a satellite to the P & G plant; and to a trucking concern located nearby. All utilities including large water mains, gas mains and a sewerage system were available nearby.
The trial court noted the excellent qualifications of Beauregard's appraisers but was more impressed with the State's expert witnesses Darrel V. Willett and Perry E. Futrell. Each has developed a number of residential subdivisions in the immediate area and each has for a number of years been actively engaged in the sale of property and the construction of residences and other buildings in the immediate area. Both live in Pineville and their business interests have been mostly in the surrounding area. Their experience in the immediate area was superior to that of Beauregard's experts. Willett and Futrell impressively defended their appraisals. They explained that the property was not commercial because it lacked frontage on a U.S. Highway and along an active railroad line. Beauregard's property which had met these qualifications had been sold to P & G. It is noted that P & G purchased property from other owners at the same time that it acquired Beauregard's railroad and U.S. Highway frontage. This indicates that the remainder of Beauregard's tract was not needed for P & G's forseeable development.
Beauregard contended that the 70 acre tract to the east of the expropriated tract sustained severance damages because it was too small to interest prospective clients as commercial property. This contention fails with the finding that this tract is residential rather than commercial property. There were no severance damages suffered by this tract. It retained its frontage on "Pardue Road" and its proximity to the utilities.
Beauregard's contention that the 135 acre tract west of the right of way suffered severe severance damages, was based on their expert's $2,000 per acre before appraisal (based on commercial usage) and their after appraisal of between $300 and $800 per acre depending upon which appraisal was adopted. They assumed that the tract was landlocked, an assumption which the trial court properly rejected.
The State did not allege or offer evidence that defendant's property enjoyed benefits which would offset severance damages. The trial court accepted the State's expert's testimony that the before value of the 135 acre tract was $1,000 per acre and the after value was $895 per acre. This was in turn based on the finding that some of the eastern tract had a value of $3,000 per acre. The higher value was assigned because of the frontage on the "Pardue Road", the proximity to utilities, and the level condition of that area. It was considered ideal for immediate development *790 as residential property. The central portion of the property along the ridge which included the expropriated 18.604 acres, was valued at $2,000 per acre because it would be developed after the eastern development was completed. The western portion of the property was valued at $1,000 per acre because it had substantial hills and ravines. It was farthest from the road frontage, the existing utilities, and would not be developed for residential purposes until the other areas had been sold.
There was no manifest error in the trial court's acceptance of the State's expert testimony and their impressive defense of their opinions. The award of severance damages of $105 per acre for the 135 acre tract was supported by the evidence that it would cost this sum to bring utilities to the western 135 acre tract. This was not awarded as the "cost to cure" but was properly considered as the reduced price which would be paid for the tract by an informed purchaser. This severance damage was awarded because the orderly development of Beauregard's tract in three stages would bring utilities to the western 135 acres at no substantial additional cost. The expropriation denied this orderly development to Beauregard. The severance damages offset the added cost of bringing utilities along the service road to the western tract. When the service utilities are added to the western tract, it is just as attractive for residential development after the expropriation as it was before. The award is correct.
We also affirm the trial court's award of $825 as severance damages for the .425 acre north of the right of way. This tract was uniformly appraised at $2,000 per acre before the taking. After the taking it was landlocked. It nevertheless had some value as a prospective addition to property owned by the adjacent landowner. Its value as a billboard site was also recognized by one appraiser. There is no manifest error in the trial court's award of only $825 as severance damages suffered by that tract.
Beauregard complained that the trial court erred in failing to grant a new trial. The application was considered by a judge other than the presiding judge at trial. We fail to find an abuse of the trial court's wide discretion in determining whether to grant a new trial. Strobel v. Schlegel, 145 So.2d 664 (La.App. 4 Cir. 1962); Shows v. Williamson, 256 So.2d 688 (La.App. 2 Cir. 1972).
Beauregard's expert appraisers each billed Beauregard $1,200 for their services. Beauregard's expert engineers Sandefur and Daigre billed Beauregard $929.62 and $975.24 respectively. The trial court awarded fees for these expert witnesses set at $600 each for the appraisers and $250 each for the engineers.
The fixing of expert fees involves questions of fact. Determination of the amount for expert witness fees rests largely within the discretion of the trial judge and an agreement entered into between expert witnesses and parties to a suit as to the amount of fee to be received is no criterion to be used by the court in fixing a fee. State, Department of Highways v. Donner Corporation, 236 So.2d 841 (La.App. 3 Cir. 1970); Recreation and Park Commission v. Perkins, 231 La. 869, 93 So.2d 198 (1957).
The fixing of expert fees rests within the sound discretion of the trial court. State, Department of Highways v. Stegemann, 269 So.2d 480 (La.App. 3 Cir. 1972); State, Department of Highways v. Smith, 272 So.2d 746 (La.App. 3 Cir. 1972).
The majority of this panel does not find manifest error or an abuse of the trial court's discretion in the award of fees for the experts employed by Beauregard.[2] *791
*792 The trial court judgment is affirmed. Costs of this appeal are assessed to defendant appellant.
Affirmed.
HOOD, J., concurs in the result.

ON APPLICATION FOR REHEARING
PER CURIAM.
Defendant Beauregard Development Co., Inc., timely applied for rehearing directing attention to errors of calculation and alleging other errors in our opinion. We undertake to correct the errors of calculation but maintain our conclusion that the trial court's factual determinations were supported by the record.
We erroneously stated that the Department deposited $38,208.00 at the time of the taking. They actually deposited $37,208.00 at that time.
We erroneously stated that the eastern 70 acre tract's only ingress or egress was from its 1,338' frontage on "Pardue Road." In addition this 70 acre tract had a 329' frontage on an undeveloped road named "Remount Road." This fact was assigned no significance by the appraisers, by the trial court, by the attorneys, or by us. The frontage was in existence both before and after the expropriation and did not improve the property.
Both the trial court and this court concluded that Beauregard's 135 acre tract suffered severance damages of $105.00 per acre, and that Beauregard's .425 acre tract suffered severance damages of $825.00. The total of these two awards of severance damages is $15,000.00 rather than the $14,005.00 awarded by the trial court and affirmed by us.
Beauregard's other assignments of error were considered in our original opinion. Each member of this panel maintains the respective positions stated in our original opinion.
Because of the inadvertent error of calculation by both the trial court and this court, the trial court's award of $14,005.00 for severance damages is increased to the sum of $15,000.00. It is hereby ordered, adjudged and decreed that Beauregard Development Co., Inc., is awarded severance damages in the sum of $15,000.00 to be paid by the State of Louisiana, Through the Department of Highways. The Department of Highways is entitled to credit for its prior payment of severance damages. Beauregard Development is entitled to legal interest on the unpaid severance damages from the date of judicial demand. All costs of this appeal are now assessed to the State of Louisiana, Through the Department of Highways, except insofar as LSA-R.S. 13:4521 is applicable. With these amendments, the application for rehearing is denied.
Judgment amended, and application for rehearing denied.

ON APPLICATION FOR REHEARING
MILLER, Judge.
The writer agrees with the Per Curiam handled down this date. Nevertheless, I would grant the application for rehearing limited to the position taken by the writer in footnote 2 of the original opinionthat the landowner is entitled to full reimbursement for certain expert fees. The writer also takes this means of replying to a reference to this Beauregard Development decision, in a dissenting opinion appearing *793 in the case of State, Department of Highways v. Daigle, 278 So.2d 525 (La.App. 3 Cir., 1973).
One point noted in that dissent should be emphasized. In the Beauregard case, not one single expert suggested that the Beauregard property should be appraised on a basis which would award a higher value for "the usual 200 feet (depth)" which fronted the road. We concluded in Beauregard that the trial court's acceptance of certain expert testimony and his rejection of other expert testimony, was abundantly supported by the record. I fail to see how our holding in Beauregard supports a suggestion that we are departing from the front landrear land theory, which has been almost uniformly followed by this court.
NOTES
[1] The writer would increase the award to allow landowner to recover the amount Beauregard was obligated to pay three experts. See footnote 2.
[2] As to the expert fees awarded Sandefur, Monsur, and Webb, the writer respectfully dissents. Another panel of this court is this date handing down decisions in the cases of State, Department of Highways v. Wellan, 279 So.2d 782 (La.App. 3 Cir. 1973) [4174]. and State, Department of Highways v. Wellan's, Inc., 279 So. 2d 785 (La.App. 3 Cir. 1973) [4175], in which expert fees of $1,400 each, were awarded to landowner's experts Monsur and Webb. The Highway Department did not complain that these awards were excessive. A careful reading of the testimony in these three cases shows that it was established that the experts spent more time and effort working on the Beauregard case than on the Wellan cases.

I respectfully submit that there is nothing in the three records to suggest that the experts used more time, effort or out of pocket expenses in the Wellan cases than in the Beauregard cases. The difference in the cases is that they were tried before different trial judges. The expert fees set in the Wellan cases were in line with the numerous highway expropriation cases appealed from Rapides Parish. The award in the instant (Beauregard) case is a total departure from the awards for expert fees.
Maybe the awards for expert fees have been too high. If so, there is nothing in this record to distinguish it from the others. The Highway Department has not offered evidence to suggest that its experts work for less than the amount that Beauregard was required to pay in order to establish its claim for severance damages, a claim which was awarded over the Department's resistance.
The reduction of Sandefur's $929.62 expert fee to $250 was manifestly wrong. The Department's surveys were rejected by the trial court. The Department's experts based their original appraisal on the Department's erroneous surveys. They made substantial changes in their appraisal based on Sandefur's survey. The fact that the Highway Department used Sandefur's survey and the trial court accepted and used Sandefur's survey establish the need for Sandefur's work.
There is no evidence to suggest that $700 is an unreasonable charge for the survey of a $223.6 acre tract with irregular boundaries. In this case the Highway Department saved the cost of getting a correct survey. At a cost of $154.62 Sandefur purchased copies of his plats (together with a well prepared plastic overlay) for use by the expert witnesses and the court. Sandefur charged $75 for his court appearance. These three charges made up his total bill of $929.62. The trial judge did not state that the fee charged by this or any expert was unreasonable, and did not offer reasons to support his reduction of the fees.
The majority is holding that the landowner can get a survey of a 223.6 acre irregularly bounded tract for about $185, that the landowner is only entitled to about $45 for $154.62 worth of out-of-pocket costs for copies of plats which were found to be essential for the trial of the case, and that an expert engineer's fee for his court appearance is worth about $20. If this is not manifest error, I have never seen it.
I can agree to the reduction of the other engineer's fee to $250. Although his $975.25 fee was carefully explained and appears reasonable, the work was irrelevant to the issues presented.
Monsur and Webb each went to the subject tract four or five times; they conferred with Beauregard's attorneys several times; they searched for and extracted sales indicators to determine the fair market value of the tract and severance damages; they had aerial photographs made to determine the effects of the taking, and these were among the most helpful exhibits in evidence; they conferred with the engineers concerning the true boundaries (which differed from the boundaries shown in the Department's surveys) and the effect of the taking; they prepared reports supporting their appraisal; they were available for the pretrial conference, a conference which the State's counsel did not attend; and they testified in court. Beauregard was bound to pay each expert $1,200 for his services, regardless of the outcome of the litigation.
It is dificult for me to comprehend how these same two experts are entitled to $1,400 each for services rendered in the Wellan cases (again I note, the Department was satisfied with the $1400 awarded for each expert), and are entitled to only $600 each for services rendered to Beauregard. These inconsistencies which are based on nothing in the record and are totally unexplained by the trial judge, appear to me to be arbitrary. Arbitrary decisions encourage the trial and appeal of cases. I suggest that our system of review offers an opportunity for a more understandable and acceptable result.
In expropriation proceedings, the condemning authority is taxed with the reasonable costs of the testifying expert witnesses retained by the landowner to help him obtain just compensation. Fees to be paid such expert appraisers are based not only upon their appearance in court but also upon the preparatory work done by them. State, Department of Highways v. William T. Burton Indus., Inc., 219 So.2d 837 (La.App. 3 Cir. 1969) and cases therein cited at 845.
I would award expert fees in the sum of $1,200 for Hab Monsur; $1,200 for W. C. Webb; $929.62 for Daniel D. Sandefur; and $250 for Louis J. Daigre, and assess costs of this appeal to plaintiff appellee, except insofar as LSA-R.S. 13:4521 is applicable.