370 So.2d 1282 (1979)
John Millard BOOTHE et ux., Plaintiffs-Appellees,
v.
DEPARTMENT OF PUBLIC WORKS et al., Defendants-Appellants.
No. 6915.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1979.
Rehearing Denied June 6, 1979.
*1283 Hudson, Potts & Bernstein, W. Craig Henry, Monroe, for defendants-appellants.
Reeves & Owens, Jack F. Owens, Jr., Harrisonburg, for plaintiffs-appellees.
Before CULPEPPER, CUTRER and STOKER, JJ.
CUTRER, Judge.
The plaintiffs, John Millard Boothe and Mable Boothe, bring this suit for damages arising out of the construction of a navigation project which allegedly inundated a portion of the plaintiffs' land and obstructed the use of a passageway by the plaintiffs which led to a public road. The defendants in the case were Louisiana Department of *1284 Public Works, the Corps of Engineers, and the Catahoula Parish Police Jury.[1]
This suit arose as a result of the construction of the Ouachita-Black River Navigation Project authorized by the United States Congress in the River and Harbor Act of 1960. The purpose of the construction was to promote navigation on the Ouachita and Black Rivers by providing a navigational channel at least 9 feet deep and 100 feet wide at all points. In order to fulfill this purpose, the Jonesville Dam and Lock combination was constructed and placed in operation on March 28, 1972. The installation of this facility created what is commonly referred to as the "Jonesville Pool", which extends upstream approximately 170 miles to Columbia, Louisiana. As a result of the construction of the Jonesville Pool, the water level maintains a minimum elevation of 34 feet mean sea level at all times.
The plaintiffs' farm is located on the west side of Rawson Creek, which creek empties into the Jonesville Pool at the Ouachita River. Before the construction, Rawson Creek had an elevation of 21.5 feet mean sea level. This creek for something less than 48% of the year would remain at a low tide, affording the plaintiffs an opportunity to cross the creek in front of their home in order to reach a parish road near the east bank, which parish road led to a state road in the near vicinity. It was stipulated that the creek was impassable for something more than 52% of the year due to the high river state that naturally occurred during the winter and spring months. During the times that Rawson Creek was impassable, the plaintiffs would reach their property by traveling on a road owned and maintained principally by International Paper Company. To get to the state highway from the plaintiffs' home, this route required a travel of 9.3 miles, whereas by crossing the "ford" the plaintiffs were able to reach State Highway La. 124 by traveling less than a mile. After the construction of the Jonesville Dam and Lock combination, the water level remained at such a height that the partial use of the "ford" by the plaintiffs across Rawson Creek was cut off entirely. The plaintiffs were then relegated to the use of the International Paper Company road to reach their property from Highway 124 or if they crossed Rawson Creek it would have to be by boat.
After trial on the merits, the trial court, in written reasons, awarded the plaintiffs the sum of $28,000.00. From this judgment the Department of Public Works appealed.
The appellant first contends that the plaintiffs had no legal right to cross Rawson Creek at the "ford" in order to reach their property and thus no damages could be awarded for any loss thereof. The appellant further contends that the trial court committed manifest error in awarding damages in the sum of $28,000.00.
As we approach the first issue as to whether the plaintiffs' had a legal right to use the "ford" across the creek, we must first point out that the trial court, in its reasons for judgment, stated that this proceeding was a tort action and the trial court treated the cause as such. This conclusion of the trial court was error. This is not a tort action but one of appropriation. The Department of Public Works did not file expropriation proceedings on the property owned by the plaintiffs. In this situation, where one's property is taken or damaged by a public body without expropriation proceedings, the owners of such property are still entitled to redress. Reymond v. Department of Highways, 255 La. 425, 231 So.2d 375 (1970); La.Const.1974, Art. 1, § 4. The taking of such property without the proper exercise of eminent domain, however, is not a tort but an appropriation. Department of Highways v. Mouledous, 199 So.2d 185 (La.App. 3rd Cir. 1967), writ denied 250 La. 934, 199 So.2d 927 (1967).
As to the plaintiffs' legal right to use the "ford" across the creek, the trial court, in its reasons for judgment, stated that the plaintiffs and their ancestors in *1285 title had used the "ford" for many years before the construction of the project. On this basis the trial court awarded damages. Apparently the trial court was of the impression that the right to use the "ford" had been acquired by prescription. It is undisputed that Mr. George Sargent owns the east side or the east bank of the creek at the location of the "ford." The trial court was in error in its conclusion that the plaintiffs had acquired by prescription a servitude of passage across the property of George Sargent. The right of passage is a discontinuous servitude. LSA-C.C. Art. 727. This type of servitude can only be established by title. LSA-C.C. Art. 766.[2]
Having concluded that the right of passage across the creek and to the gravel road leading to the state highway could not be acquired by prescription, we have to examine the record to determine if the "ford" had become a part of a public road under the provisions of LSA-R.S. 48:491. LSA-R.S. 48:491 reads as follows:
"All roads or streets in this state that are opened, laid out or appointed by virtue of any act of the legislature or by virtue of an order of any parish governing authority in any parish, or any municipal governing authority in any municipality, or which have been or are hereafter kept up, maintained or worked for a period of three years by authority of any parish governing authority in its parish or by authority of any municipal governing authority in its municipality shall be public roads or streets as the case may be. Also all roads or streets made on the front of their respective tracts of lands by individuals when the lands have their front on any of the rivers or bayous within this state shall be public roads when located outside of municipalities and shall be public streets when located inside of municipalities."
As previously stated, George Sargent owned the land on the east side of Rawson Creek. His home was situated near the creek. There is evidence by a member of the Police Jury and an employee of the Police Jury that a gravel road was maintained by the Police Jury of Catahoula Parish down to the home of George Sargent. Neither the testimony nor the pictures introduced into evidence support the contention that there was maintenance down the sloping banks and across the creek. Furthermore, it was stipulated that the creek was impassable for at least 52% of the year. It is inconceivable that the bank and the "ford" could be maintained by the Police Jury to such an extent that it would enable the "ford" to become part of a public road within the provisions of LSA-R.S. 48:491. Mr. George Sargent testified that he allowed the Boothe family to cross his property and the "ford" but did not consider the crossing a public passageway. Under these circumstances, no legal rights to the passageway were ever acquired by the plaintiffs, either by prescription or under the provisions of LSA-R.S. 48:491; thus damages as the result of the loss of any use thereof cannot be awarded.
This is not a situation where complete ingress and egress was cut off by the construction of the project. The plaintiffs have, in the past, used, for more than 52% of the time, the International Paper Company route to their property. When a person's land is condemned, only reasonable ingress and egress is required. State Department of Highways v. Beauregard Development Company, Inc., 279 So.2d 787 (La.App. 3rd Cir. 1973), writ denied 281 So.2d 759 (La.1973). Since reasonable means of access to plaintiffs' land existed after the appropriation, the State is under no duty to afford the plaintiffs any other access route.
Our next issue for decision is the amount of damages to be awarded. The court, in its reasons for judgment, awarded a lump sum of $28,000.
The plaintiffs contend the loss of the use of the "ford" during the summer and fall of each year causes them to travel further to *1286 get to a public road and thus the production of soybeans is more expensive. Also, they contend that they were damaged by virtue of the fact that when they sold their timber, four years after the taking, the buyer would have paid more money for the timber had he been able to use the "ford."
The only person who testified as to the value of the land that became inundated and also the damages that were apparently awarded by the court was Mr. Charlie McCain, an expert appraiser. He was of the opinion that the plaintiffs had suffered $18,200 for "consequential damages." He arrived at this damage figure by calculating what he thought was the difference in the value of the timber that was sold and to be sold, which timber had to be transported over the International Paper Company circuitous route rather than across the "ford" to the nearby state highway. He concluded that the value of the timber loss in the 1976 sale and for future sales was $15,800. The additional expense of soybean production was figured at $2,400. He stated that the "consequential damage" figure of $18,200 did not include any "inconvenience." Mr. McCain testified that 9.18 acres of the plaintiffs' property had been inundated by virtue of the construction of the project. He placed a value of $3,200 on this 9.18 acres so appropriated. This appraiser estimated the plaintiffs' total loss to be $21,400.00, including the value of the land taken. The trial court's award of $28,000.00 must have included some "inconvenience damage."
Having concluded that the plaintiffs had no legal right to the passageway, the trial court was in error in awarding damages for the appropriation thereof. The plaintiffs, however, would be entitled to an award for the value of the land that was inundated, $3,200.00. Thus the award of the trial court will be reduced to the value of the property inundated, $3,200.00.
For the reasons assigned, the judgment of the trial court is amended by reducing the award to the sum of $3,200.00. It is affirmed in all other respects. Defendant to pay the costs of this appeal.
AMENDED AND AFFIRMED.
NOTES
[1] By stipulation the Catahoula Parish Police Jury and the Corps of Engineers were dismissed. The judgment signed in this matter, however, does not reflect this stipulated dismissal.
[2] The new amendments to the servitude articles adopted by Act 514 of 1977 became effective January 1, 1978. These amendments are not retroactive as to discontinuous servitudes. See comments under the new Art. 740.